**THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

AVIATION ONE OF FLORIDA, INC.,

      Plaintiff,

vs.                               CASE NO.: 6:13-cv-01243-
                                             CEH-DAB

AIRBORNE INSURANCE CONSULTANTS
(PTY), LTD, AFRICA TOURS AND TRAVEL,
LLC D/B/A S.A. GUINEA AND MOHAMED
DIAOUNE,

      Defendants.

_____/

## DEFENDANT AIRBORNE INSURANCE CONSULTANTS (PTY), LTD'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND INCORPORATED MEMORANDUM OF LAW

Defendant Airborne Insurance Consultants (Pty), Ltd ("Airborne") hereby moves pursuant to Federal Rule of Civil Procedure 12(b)(2) that it be dismissed from this action for lack of personal jurisdiction and states:

## INTRODUCTION

This is an agent negligence case arising from Airborne's alleged negligent behavior in procuring an aircraft insurance policy. In this case, Plaintiff leased its aircraft to Africa Tours & Travel d/b/a S.A. Guinea ("S.A. Guinea"). S.A. Guinea (a Georgia citizen) then contacted Airborne, a South African insurance broker, to procure insurance coverage for the aircraft while the aircraft was operating out of Guinea, West Africa. Airborne subsequently procured a policy for the aircraft through Guardrisk Insurance Company ("Guardrisk"), a registered South African insurance company. The following year, S.A. Guinea—while based in West Africa—used Airborne to procure a renewal policy through Guardrisk. The coverage in the renewal policy was limited to "the Continent of Africa" and did not insure the aircraft for any risks in Florida. Under

both policies, Airborne sent S.A. Guinea the invoices and S.A. Guinea, not Plaintiff, made all of the policy payments. Two weeks after Guardrisk issued the renewal policy, the aircraft crashed in Guinea, West Africa. The insurer—Guardrisk—denied coverage based on various policy exclusions. It was only after Guardrisk issued the policies and after the aircraft crashed that Airborne had any communications with Plaintiff (the Florida resident). Plaintiff has now sued Airborne and asserted claims of agent negligence and common-law indemnity arising from Airborne's actions in procuring the renewal policy.

This Court, however, does not have jurisdiction over Airborne under the long-arm statute. First, Airborne did not "commit a tort" in Florida because all of Airborne's allegedly improper conduct was directed toward Georgia and West Africa and took place in South Africa, not Florida. Since Plaintiff's causes of action do not "arise" from the alleged Florida-based communications, they cannot be used to support personal jurisdiction over Airborne. Moreover, Airborne did not "contract to insure" property or a risk in Florida (or any risk at all) because it is not an insurer and because when Guardrisk issued the renewal policy the aircraft was in West Africa and the coverage was limited to the continent of Africa. Airborne also did not carry on a business venture in Florida and received no money from any Florida resident. Finally, assuming long-arm jurisdiction exists, asserting jurisdiction over Airborne would violate due process because Airborne could not have anticipated being haled into Florida courts.

## BACKGROUND

### A.     Factual Background

 Plaintiff entered into an aircraft Lease Agreement with S.A. Guinea for the lease of a Beach model 1900C aircraft (the "Aircraft"). Complaint ¶ 11, Dkt. 1. Under this Lease, S.A. Guinea was required to secure and maintain insurance coverage for the Aircraft. Compl. ¶ 13;

Compl. Ex. A, at ¶ 5. Pursuant to its obligations under the Lease, S.A. Guinea subsequently contacted Airborne[1] to procure an insurance policy for the Aircraft. Compl. ¶ 13; Affidavit of Deborah Ray, attached hereto as Exhibit "1".

In response, Airborne sent S.A. Guinea an Aviation Insurance Quotation describing a policy that would cover the Aircraft's operations from August 2008 to August 2009. Compl. Ex. B, at 2 (the "Quotation"). This Quotation informed S.A. Guinea that coverage would be through a Guardrisk Insurance Company Policy, and asked S.A. Guinea to sign and acknowledge that the information in the Quotation was accurate and that coverage had been arranged in accordance with S.A. Guinea's requirements. *Id.* at 3, 6. After S.A. Guinea signed the Quotation, Guardrisk issued a Policy for the Aircraft, and both S.A. Guinea and Plaintiff were named as insureds. Airborne sent S.A. Guinea all of the invoices for the Policy and S.A. Guinea paid the premiums. Compl. ¶ 13; Ray Aff. ¶ 21.

For that next year, S.A. Guinea operated a charter service out of Guinea, West Africa, using the Aircraft to fly mine workers between the capital city and the mining site. Compl. Ex. B, at 5. S.A. Guinea again approached Airborne, this time about obtaining a renewal policy. *See* Compl. Ex. D. Airborne subsequently sent S.A. Guinea an "Aviation Insurance Renewal Indication Quote" for the period August 2009 to August 2010. Compl. Ex. B, at 14 (the "Renewal Quotation"). In this Renewal Quotation, the "geographical limits" of the proposed coverage is limited to "[t]he Continent of Africa." *Id.* at 15. In addition, the "Main Area of Operation" is "Guinea, West Africa," and the Aircraft is listed as "Based" in West Africa. *Id.* at 17. The Renewal Quotation states that the coverage would be through a Guardrisk Insurance

---

[1] Airborne is an aviation insurance broker based in South Africa, it is not an insurance company. Compl. ¶ 2. Airborne does not issue or underwrite insurance policies, and it functions as a regulated insurance broker. It is a "private company formed and registered and maintaining its office in South Africa." Emergency Mtn, Dkt. 26, at 1.

Company Policy. *Id.* at 15. The Renewal Quotation also lists the pilots as Curtiss Robert Seal and Ryan Losser, and affirms that there is no Breach of Warranty Coverage. *Id.* at 16.

Once again, S.A. Guinea, through its principal Ousmane Balde, signed the Renewal Quotation and confirmed that it read and understood the quotation and that the information was "accurate and that coverage has been arranged entirely in accordance with [its] requirements." *Id.* at 18. S.A. Guinea also signed a "Confirmation of Terms and Placement of Insurance" where it confirmed "that the insurance is correct as per [its] requirements." *Id.* at 24. Once S.A. Guinea signed the Renewal Quotation, Guardrisk issued the Renewal Policy. *See* Compl. Ex. C. In the Renewal Policy it states that the "Geographical Limits" of the Policy are "The Continent of Africa." *Id.* at 36. In addition, the Policy has a forum selection and choice of law provision which states that the Policy is governed by the law of the Republic of South Africa, which "shall have" jurisdiction in any dispute under the Policy. *Id.* at 27. Airborne sent S.A. Guinea all of the invoices for the Renewal Policy and S.A. Guinea paid all of the premiums, often wiring the payments from Guinea, West Africa. *See* Compl. ¶ 13; Compl. Ex. D, at 23.

Two weeks after Guardrisk issued the Renewal Policy, on September 1, 2009, the Aircraft crashed in Guinea, West Africa. Compl. ¶ 22. At the time of the crash, Duane Wilson and First Officer M. O'Diallo were piloting the Aircraft. Compl. ¶ 24; Compl. Ex. D, at 33. When S.A. Guinea tendered the claim for payment by Guardrisk, Guardrisk denied the claim because: (1) Pilot D. Wilson and First Officer M. O'Diallo were not stated in the schedule to the Insurance Agreement; (2) there was no coverage while the aircraft was landing or taking off from a place which does not comply with the recommendations of the manufacturer; and (3) the Insurance Agreement was breached since S.A. Guinea/Plaintiff failed to comply with the Civil Air Regulations regarding take-off distances and "accelerate-stop" distances. *Id.* at 33–34.

4

Based on these facts, Plaintiff has sued Airborne for Negligence (Count I) and Common-Law Indemnity (Count II). In Count I, Plaintiff claims Airborne was Plaintiff's "agent" and that Airborne was negligent in (1) furnishing a policy of insurance from an insurer not authorized to insure a loss in Florida and (2) completing the policy paperwork, including failing to add Breach of Warranty Coverage in the renewal Policy.[2] Compl. ¶¶ 31–32. In Count II, Plaintiff asserts a claim for "Common-Law Indemnity," claiming that Airborne must indemnify Plaintiff for "legal fees and costs, travel and transportation expenses, and sums owed to the third-party lender" on the Aircraft. In Count III Plaintiff sues Mr. Diaoune for Breach of Guarantee, and in Count IV Plaintiff sues S.A. Guinea for Breach of the Lease.

### B.      Jurisdictional Allegations and Facts

Plaintiff attempts to obtain jurisdiction over Airborne by alleging:

- "Although not authorized to engage in business in the state, Airborne as agent bound, issued and delivered a policy of aviation insurance to Florida resident Aviation One in Florida, to insure an aircraft that was in Florida at the time coverage was issued." Compl. ¶ 5.

- "The subject aircraft was registered and located in a hangar in Volusia County, Florida." Compl. ¶ 6.

- "Airborne engaged in business correspondence with Aviation One in connection with the procurement of the insurance and servicing of the account, issued and delivered in Florida coverage binders, a contract of insurance and renewal to Aviation One . . . ." Compl. ¶ 7.

- S.A. Guinea procured insurance "from Airborne, which binder delivered to Aviation One in Florida agreeing to procure insurance to cover all losses as required by the Lease terms." Compl. ¶ 13.

- "Issued and delivered in Florida to Aviation One by Airborne was Guardrisk policy of aviation insurance no.: AVD43751 . . . ." Compl. ¶ 16.

---

[2] Plaintiff also states Airborne was "fully advised of additional pilots that were to be added to the policy, including, but not limited to, Duane Wilson." Compl. ¶ 30. But Plaintiff does not claim Airborne was negligent in failing to add Duane Wilson to the Policy as a pilot, perhaps in light of the admission in Exhibit D to the Complaint that S.A. Guinea never sent Airborne the appropriate paperwork to include Duane Wilson on the Policy, and also because S.A. Guinea never requested that Airborne add First Officer M. O'Diallo to the Policy.

- "Attached as Composite Exhibit 'D' (Part I and II) is exemplary correspondence concerning business communications and related information Airborne directed to Florida, as well as the action and inaction on the part of Airborne." Compl. ¶ 21.

All of Plaintiff's jurisdictional "facts," however, are baseless allegations, each of which is explicitly refuted by the Affidavit of Deborah Ray. *See* Ex. 1.

For example, Airborne never "issued and delivered" the Policy or Renewal Policy in Florida. *See* Ray Aff. ¶¶ 18–20. In addition, Airborne never made telephonic, electronic, or written communications to Plaintiff in Florida until after Guardrisk issued the Renewal Policy and after the Aircraft crash. *Id.* at ¶ 18. In fact, Plaintiff was never involved in the procurement of either the Policy or the Renewal Policy. *Id.* at ¶¶ 17–20, 22; Compl. Ex. D II, at 22 (correspondence from Plaintiff stating that S.A. Guinea was responsible for securing and maintaining the insurance coverage on the Aircraft). Not only did Airborne never communicate with Plaintiff, the Florida resident, regarding procuring the coverage, Airborne also did not communicate with Plaintiff regarding the "servicing" of the account. Ray Aff. ¶¶17–19, 21–22. Indeed, Airborne never communicated with Plaintiff (the Florida corporation) prior to the Aircraft accident at issue. *Id.*; Compl. Composite Ex. D (demonstrating that all correspondence between Airborne and Plaintiff occurred after the accident).

Instead, Airborne communicated solely with S.A. Guinea, an alleged Georgia citizen, through email communications while S.A. Guinea was located in Georgia and Guinea, West Africa. *Id.* All negotiations and communications related to the procurement of the coverage through Guardrisk occurred between S.A. Guinea and Airborne. Ray Aff. ¶¶ 17–20. There was no expectation that any aspect of the procurement of the policy would be performed in Florida, including payment therefor. *Id.* at ¶ 20. Moreover, Airborne sent all invoices to S.A. Guinea, who often paid the premiums via wire transfer from Guinea, West Africa. Compl. Ex. D, at 23.

6

**LEGAL STANDARD**

In diversity cases, personal jurisdiction over a nonresident defendant exists when (1) the defendant is within the reach of Florida's long-arm statute, Fla. Stat. § 48.193; and (2) the defendant has sufficient minimum contacts with Florida so that maintenance of the suit does not offend "'traditional notions of fair play and substantial justice'" in violation of the Due Process Clause. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The long-arm statute must be strictly construed. *Sculptchair*, 94 F.3d at 627. That means that any doubts about the applicability of the statute must be resolved in favor of Airborne and against a conclusion that the court has personal jurisdiction over Airborne.

In this case, Plaintiff attempts to plead specific jurisdiction pursuant to Florida's long-arm statute.[3] Plaintiff, therefore, has the initial burden to allege sufficient jurisdictional facts to bring Airborne within Florida's long-arm statute. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). It has not done so. Further, because Airborne has provided affidavit evidence that Fla. Stat. § 48.193 does not apply, Plaintiff now must prove that long-arm jurisdiction is proper through record evidence. *Id.* (affirming dismissal of complaint for lack of personal jurisdiction, based in part on the defendant's affidavit). If the plaintiff fails to do so, the

---

[3] Plaintiff has not alleged facts to show that Airborne is subject to the general jurisdiction of Florida courts. Moreover, the Supreme Court's recent *Daimler AG v. Bauman* decision forecloses any effort by Plaintiff to establish general jurisdiction over Airborne, which is a foreign entity with no contacts with Florida. In *Daimler*, the Supreme Court explained that a plaintiff must show substantially more than a foreign corporation's "continuous and systematic" in-forum contacts for a court to have general jurisdiction over that corporation. 134 S. Ct. 746, 761 (2014) (internal quotation marks omitted). Rather, the Court explained that general jurisdiction over a foreign corporation accords with due process only if "that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). In fact, the Court equated being "at home" for a corporation as (i) incorporation there, or (ii) the presence of the corporation's principal place of business there. *Id.* at 760. Neither are true for Airborne and Airborne clearly is not "at home" in Florida. Accordingly, general jurisdiction is lacking.

court should grant the defendant's motion to dismiss. *See id.*

## ARGUMENT

## I. THERE IS NO SPECIFIC JURISDICTION OVER AIRBORNE UNDER FLORIDA'S LONG-ARM STATUTE.

In order to establish specific personal jurisdiction, Plaintiff must demonstrate that its cause of action is causally connected to Airborne's actions within the state. As explained by Florida courts, this "connexity" requirement means that Plaintiff's causes of action must be connected to a specific act committed in Florida. *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 902 (M.D. Fla. 2007). Although not alleged in the Complaint, Airborne anticipates that Plaintiff will assert that the basis for jurisdiction over Airborne is set forth in sections (1)(a)(2.); (1)(a)(4.), and (1)(a)(1.) of Florida's long-arm statute, § 48.193. As explained below, Plaintiff has not properly alleged that *any* portion of § 48.193 applies, and, even if it had, Airborne has refuted those allegations with record evidence. Thus, this Court should quash service of process and dismiss Airborne from this lawsuit.

### A. The Court does not have jurisdiction over Airborne under § 48.193(1)(a)(2.) because a "substantial aspect of the alleged tort" was not "committed" in Florida.

Pursuant to Fla. Stat. § 48.193(1)(a)(2.), Florida courts can exercise jurisdiction over a foreign defendant for "[c]ommitting a tortious act within this state." The occurrence of an injury within the state is insufficient. Rather, the plaintiff must establish "the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990) (internal quotations and alterations omitted). In addition, while out-of-state communications can sometimes trigger Florida's long-arm statute, "'the cause of action must arise from the communications.'" *Estate of Scutieri v. Chambers*, 386 F. App'x 951, 955 (11th Cir. 2010) (per curiam) (quoting *Wendt v. Horowitz*, 822 So. 2d 1252,

1260 (Fla. 2002)). This "connexity requirement" for torts committed out of state "requires courts to ask first whether the complaint states a cause of action, and if so, whether the cause of action arises from the out-of-state communications into Florida." *Id.* at 954.

In this case, Plaintiff's Complaint fails to allege any specific "tortious acts" of Airborne that took place in Florida or that the alleged torts arose from communications made into Florida. Moreover, Plaintiff fails to allege that Airborne's activities in Florida were "essential" to the success of the tort. Rather, Plaintiff alleges that Airborne committed the tort of negligence in furnishing a policy of insurance from an insurer not authorized to insure a loss in Florida and completing the policy paperwork. Compl. ¶¶ 31–32. At the latest, then, the tort claim accrued when Airborne (1) issued the Renewal Quotation; (2) completed the policy paperwork; or (3) when Guardrisk issued the Renewal Policy. *See Russo v. Fink*, 87 So. 3d 815, 818 (Fla. 4th DCA 2012) (explaining a tort claim accrues for purposes of the long-arm statute where the last event necessary to make the defendant liable for the tort took place); *Alexander & Alexander of the Carolinas, Inc. v. Nw. Oxygen, Inc.*, 541 So. 2d 1238, 1239 (Fla. 2d DCA 1989) (holding if a tort was committed by the insurance agency in procuring a policy, it was "committed" at the time the policy was obtained).

The allegations of the Complaint, the attached Exhibits, and the Affidavit of Ray, however, show that Airborne's only communications "directed" to Florida occurred after the alleged tort occurred. *See* Compl. Ex. D; Ray Aff. ¶ 18–19 (testifying Airborne's only communications with Plaintiff, the Florida resident, occurred after Guardrisk issued the Renewal Policy and after the Aircraft crashed). Since Airborne's only contact with Florida occurred after the completion of the alleged tort and were also not necessary for the alleged tort, Plaintiff cannot establish that the communications were "essential" to the success of the tort. *See Estate of*

*Scutieri*, 386 F. App'x at 955 (holding that letters sent to plaintiff in Florida did not "give rise to the cause of action" because the fraudulent scheme had *already been established elsewhere*, and thus "the letters are insufficient to establish jurisdiction" under the tortious activity clause). Accordingly, since Plaintiff's causes of action did not "arise from" Airborne's limited Florida communications, there is no jurisdiction under the tortious activity section. *See Wendt*, 822 So. 2d at 1260.

**B.      The Court does not have jurisdiction over Airborne under § 48.193(1)(a)(4.).**

Pursuant to § 48.193(1)(a)(4.), an entity can be subject to Florida's personal jurisdiction for "[c]ontracting to insure a person, property, or risk located within this state at the time of contracting." Plaintiff attempts to fit Airborne in this provision by alleging repeatedly that Airborne "bound, issued, and delivered" the insurance policy to insure "an aircraft that was in Florida at the time coverage was issued." *See generally* Compl. ¶¶ 5, 6, 7, 13, 16, 21. What Plaintiff ignores, however, is that (1) insurance brokers like Airborne do not "contract to insure" as is defined within the statute and (2) the aircraft was in West Africa—not Florida—at the time Airborne procured, and Guardrisk issued, the Renewal Policy.

First, under § 48.193(1)(a)(4.) the Court has no authority to assert jurisdiction against an agent or broker who has procured an insurance contract. *Alexander & Alexander of the Carolinas, Inc. v. Nw. Oxygen, Inc.*, 541 So. 2d 1238, 1239 (Fla. 2d DCA 1989) (holding the long arm statute does not apply to insurance agencies who bring clients together with insurance companies since the insurance agencies do not insure risks within the meaning of the statute); 5 Fla. Prac., Civil Practice § 8:7 (2014 ed.). Airborne is not an insurance company. Airborne does not issue or underwrite insurance policies or insure risks at all. It is the insurance company— here, Guardrisk—that "contracts to insure." While Plaintiff claims Airborne "issued" the Policy,

these allegations are made without supporting fact and are refuted by the allegations of the Complaint and attached Exhibits which plainly show that Guardrisk issued the Policy and Renewal Policy. *See* Compl. Ex. B & C.

Second, even assuming Airborne "contracted to insure," at the time of the Renewal Policy there was no "person, property, or risk" located in Florida. In the Complaint, Plaintiff asserts that jurisdiction is proper because the Aircraft was in Florida at the time Guardrisk issued the coverage. Compl. ¶ 5. What Plaintiff tries to gloss over, however, is that it is suing Airborne for negligence in procuring the *Renewal* Policy. "The general rule in Florida is that upon each renewal of an insurance policy an entirely new and independent contract of insurance is created." *Marchesano v. Nationwide Prop. & Cas. Ins. Co.*, 506 So. 2d 410, 413 (Fla. 1987). It is plain from the Complaint's Exhibits and the Affidavit of Ray that "at the time of contracting" the Renewal Policy, the Aircraft was located in West Africa. *See* Compl. Ex. B, at 17 (stating the aircraft is "Based" in "Guinea West Africa"); Ray Aff. ¶ 23 ("The aircraft was located in Guinea, West Africa, at both (1) the time when Airborne communicated with S.A. Guinea regarding procuring the renewal policy and (2) the time when the insurer issued the renewal policy.").

In addition, the Renewal Policy did not provide coverage for the Aircraft while it was based in Florida. In fact, in both the Renewal Quotation and the Renewal Policy, the "geographical limits" of the coverage is limited to "[t]he Continent of Africa." *See* Compl. Ex. B, at 3, 7, 15; Compl. Ex. C, at 36. Accordingly, since at the time the renewal "contract" was entered into "there was no person, property or risk located within the State of Florida," there is no jurisdiction under this section. *See* Fla. Stat. § 48.193(1)(a)(4.).

**C.    The Court does not have jurisdiction over Airborne under § 48.193(1)(a)(1.).**

There can be jurisdiction under Florida Statute § 48.193(1)(a)(1.) if an entity operates,

conducts, engages in or carries on a business or business venture in the state, or has an office or agency in the state. Under § 48.193(1)(a), Plaintiff must show that when considered collectively, Airborne's activities  "'must . . . show a general course of business activity in the State *for pecuniary benefit.*'" *Fraser v. Smith*, 594 F.3d 842, 848 (11th Cir. 2010) (emphasis in original) (quoting *Dinsmore v. Martin Blumenthal Assocs. Inc.*, 314 So. 2d 561, 564 (Fla. 1975)). Here, Plaintiff has not alleged that Airborne operated, conducted, engaged in, or carried on a business or business venture in Florida. Nor has Plaintiff alleged facts to show that Airborne operated a business venture in Florida at all, much less that Airborne engaged in a general course of business activity here for pecuniary benefit.

And Airborne did not. Airborne is a South African corporation which operates in South Africa. Ray Aff. ¶ 4. It does not maintain a place of business in Florida and "conducts no business" in Florida. *Id.* at ¶¶ 5, 8. It has no employees, offices, or property in Florida. *Id.* at ¶¶ 6, 9–10. It does not generate revenue, pay taxes, or hold liens or mortgages in Florida. *Id.* at ¶¶ 10–13. Airborne also does not advertise, solicit, or provide service activities in Florida. *Id.* at ¶¶ 14–15. The only connection with Florida is that Plaintiff, a named insured on the Guardrisk Policy, is located in Florida. This is insufficient to say that Airborne was engaged in a business or business venture in Florida because Airborne dealt with S.A. Guinea, which was located in Georgia and West Africa. Airborne never sent invoices to Plaintiff or accepted any money from Plaintiff, and instead S.A. Guinea paid the policy premiums, often wiring the payments from West Africa. Compl. ¶ 13; Compl. Ex. D, at 23.

Airborne also did not engage in a "business venture" in Florida because Airborne never sent a representative to Florida to advertise or otherwise solicit Plaintiff as a client; never communicated with Plaintiff regarding the procurement of the insurance; did not have

"extensive" business correspondence with Plaintiff; and did not have a long-standing business relationship with Plaintiff. *Compare Naviera Mayaca Exp. S. de R.L. v. Brauer & Assocs., Inc.*, 559 So. 2d 1230, 1230–31 (Fla. 3d DCA 1990) (per curiam) (finding personal jurisdiction over insurance broker with a "long-standing business relationship" with Florida resident, who had "extensive" business correspondence with Plaintiff in Florida in connection with the procurement of the insurance and the servicing of the account, including *sending a representative* to Florida) *with Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc.*, 726 So. 2d 313, 314 (Fla. 3d DCA 1998) (finding defendant did not engage in a business venture despite receiving over $198,000 from a Florida resident and distinguishing *Naviera*, stating "this was not a case where Karl had a 'longstanding business relationship' with Travel over a period of years; nor did Karl send extensive business correspondence and a representative to Florida to procure and service the account"). Thus, there is no long-arm jurisdiction under this section because Airborne has not engaged in a general course of business activity in Florida. *See, e.g.*, *Jasper v. Zara*, 595 So. 2d 1075 (Fla. 2d DCA 1992) (holding long-arm statute did not permit exercise of jurisdiction in Florida in client's action against New York financial planners that communicated by phone and letter only after being solicited by client from Florida and that never maintained office, agent, address, or telephone listing in Florida, had never solicited business or advertising in Florida).

## II.   AIRBORNE DID NOT HAVE MINIMUM CONTACTS WITH FLORIDA SO MAINTAINING JURISDICTION OVER AIRBORNE DOES NOT COMPORT WITH THE DUE PROCESS REQUIREMENTS OF THE 14TH AMENDMENT

Even assuming *arguendo* that Florida's long-arm statute reaches Airborne's conduct, the Due Process Clause prohibits Florida courts from exercising jurisdiction over Airborne. Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires that the defendant have "fair warning" that a particular activity may subject him to the

jurisdiction of a foreign sovereign. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Determining minimum contacts requires evaluation of the "quality and nature" of the non-resident's activity. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). To constitute minimum contacts for purposes of personal jurisdiction, the defendant's contacts with the applicable forum must: (1) be related to the plaintiff's cause of action or have given rise to it; (2) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefit and protection of its laws; and (3) be such that the defendant should reasonably anticipate being haled into court there. *See Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993).

Applying these standards to the facts of this case, Airborne does not have sufficient minimum contacts with the state of Florida. First, under the second inquiry, Airborne did not purposefully avail itself of the privilege of conducting activities in Florida. It was S.A. Guinea, not Plaintiff, who paid the policy premiums. Thus, any revenue Airborne received from the commission was not paid with Florida dollars. Moreover, Airborne communicated mainly with S.A. Guinea, which was located in Georgia and West Africa. The policies were meant to cover the Aircraft's operations in Africa. Airborne has no office, employees, or property of any kind in Florida. It does not conduct business in Florida, and its only connection to Florida is that one of two named insureds on the policy is a Florida citizen. Airborne is not registered as a foreign corporation or foreign insurer qualified to transact business in Florida; has not transacted business in Florida; has never had any directors, officers, employees, or agents in Florida; and has not maintained any offices in Florida. In sum, Airborne's very limited electronic communications with Plaintiff following the Aircraft crash cannot mean that Airborne invoked the benefit and protection of Florida's laws.

In addition, Airborne's limited contacts with Plaintiff did not rise to the level of "minimum contacts" or otherwise give Airborne "fair warning" that its activities would subject it to Florida jurisdiction. For example, in *Thomas v. Brown*, the Eleventh Circuit held that a law firm that represented a Florida corporation did not have sufficient minimum contacts with Florida based on only telephone and electronic communications with its Florida-based client. *Thomas v. Brown*, 504 F. App'x 845, 848 (11th Cir. 2013). The court noted that the defendants had no office or property of any kind in Florida, and, like Airborne, did not market themselves to Florida. *Id.* Instead, the "only contacts" the defendants had with Florida were "telephone and electronic communications" made with the Florida-resident Plaintiffs, who were the defendant's client. *Id.* In addition, the defendants had never traveled to Florida for anything connected with the matter. *Id.* Based on this evidence, the court held the defendants did not purposefully avail themselves of conducting business in Florida. *Id.* Importantly, the court noted that the defendant did not solicit any work from their Florida-based client, and were originally contacted to represent the Florida client by entities that were located outside of Florida. *Id.* In addition, the defendant never mailed bills to Florida. *Id.* The court reasoned: "[t]he fact that [plaintiff] is a Florida corporation and that Defendants spoke on the phone with [plaintiff's] shareholders in Florida does not establish that Defendants would have 'fair warning' that their activities related to this matter would subject them to the jurisdiction of Florida." *Id.* at 849. Accordingly, the court held that the defendants did not have sufficient minimum contacts with Florida.

Likewise, any contacts Airborne had with Florida would not make Airborne anticipate being haled into Florida courts. In addition to the fact that Airborne's primary contact was a Georgia LLC that was operating a charter service out of West Africa, both the Policy and Renewal Policy Guardrisk issued to Plaintiff has a forum selection and choice of law provision

15

which states that the Policy is governed by the law of the Republic of South Africa, which "shall have" jurisdiction in any dispute under the Policy. Compl. Ex. C at 27, Dkt. 1-3. This provision indicates the intent of the parties to submit to any future litigation in the courts of the Republic of South Africa, not Florida, and weighs against a finding that Airborne could anticipate being haled into Florida courts. *Am. Express Ins. Servs. Europe Ltd. v. Duvall*, 972 So. 2d 1035, 1038–39 (Fla. 3d DCA 2008) (holding an insurance agency had no minimum contacts with Florida, based, in part, because "[a] company like [defendant] that services customers within the United Kingdom acting as an insurance agent for policies that specifically provide that they are subject to 'the laws of England and Wales' cannot reasonably anticipate being haled into court" in Florida). Under these facts, it is clear that Airborne has not purposefully availed itself of the privilege of conducting business in Florida, could not anticipate being haled to court there, and thus minimum contacts do not exist. *See, e.g.*, *Alexander & Alexander of the Carolinas, Inc. v. Nw. Oxygen, Inc.*, 541 So. 2d 1238, 1239 (Fla. 2d DCA 1989).[4]

Finally, even if Plaintiff could establish that Airborne had "minimum contacts" with Florida, subjecting Airborne to personal jurisdiction in Florida would not comport with fair play and substantial justice. The "fair play and substantial justice" inquiry is a balancing test, which

---

[4] Plaintiff may try to rely on an Alabama fraud case involving a marine insurance contract to argue that jurisdiction over Airborne does not violate the due process clause. *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355–56 (11th Cir. 2000) (applying the Alabama long-arm statute). But the facts in *Ruiz de Molina* are distinguishable and therefore that Court's finding of jurisdiction is simply not relevant and persuasive in this case. For example, the *Ruiz de Molina* Court placed significant emphasis on the fact that the defendants were charged with fraud and not mere negligence, and thus applied the *Calder* effects test. *Id.* at 1385 (noting the defendants were "not charged with mere negligence"). This is significant because the *Calder* test applies only to cases involving intentional torts, not negligence. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1224 (11th Cir. 2009) (noting that minimum contacts test is applicable to torts of negligence while *Calder* effects test is applicable to intentional torts); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 8:12-CV-755-T-26TBM, 2012 WL 2952452, at *4 (M.D. Fla. July 19, 2012). In this case, Plaintiff has not alleged fraud against Airborne so the *Calder* test as applied in *Ruiz de Molina* is inapplicable. In addition, there are numerous distinguishing facts. Foremost among those, in this case, unlike in *Molina*, the policy was not purchased by a forum resident.

considers the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental, substantive social policies. *Meier v. Sun Int'l Hotels*, 288 F.3d 1264, 1276 (11th Cir. 2002). In this case, a balancing of the relevant factors demonstrates that asserting personal jurisdiction over Airborne in Florida would be inappropriate because (1) the burden on Airborne to litigate Plaintiffs' claims in Florida would be great; (2) the acts complained of occurred in South Africa; and (3) it would not be convenient, efficient, or effective to address Plaintiffs' claims against Airborne in Florida. For these reasons, it would be entirely unreasonable, a violation of Due Process, and would offend traditional notions of fair play and substantial justice for this Court to exercise jurisdiction over Airborne.

## CONCLUSION

For the aforementioned reasons, Airborne requests that it be dismissed with prejudice.

/s/ John P. O'Flanagan
John P. O'Flanagan
Florida Bar No.: 0072885
L. Robert Bourgeois
Florida Bar No: 0781540
Erica T. Healey
Florida Bar No: 0086586
BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Boulevard, Suite 1500
Tampa, FL  33602
Telephone No: (813) 221-1500
Fax No:        (813) 222-3066
Email: bbourgeois@bankerlopez.com
        joflanagan@bankerlopez.com
        ehealey@bankerlopez.com
Attorneys for DEFENDANT AIRBONE INSURANCE
CONSULTANTS, LTD.

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 20th, 2014 I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) to Rosemary Hayes, Esq., Attorney for Plaintiff. In addition, a true and accurate copy of the above and foregoing has been furnished by U.S. Mail to Mohamed Diaoune, 1955 Henderson Way, Lawrenceville, GA 30043, *self-represented*.

/s/ John P. O'Flanagan
John P. O'Flanagan
Florida Bar No.: 0072885
L. Robert Bourgeois
Florida Bar No: 0781540
Erica T. Healey
Florida Bar No: 0086586
BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Boulevard, Suite 1500
Tampa, FL  33602
Telephone No: (813) 221-1500
Fax No:        (813) 222-3066
Email: bbourgeois@bankerlopez.com
        joflanagan@bankerlopez.com
        ehealey@bankerlopez.com
Attorneys for DEFENDANT AIRBONE INSURANCE CONSULTANTS, LTD.

18