IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 6:13-cv-1243-Orl-36DAB

| | |
|---|---|
| AVIATION ONE OF FLORIDA, INC., | § |
| | § |
| Plaintiff, | § |
| | § |
| V. | § |
| | § |
| AIRBORNE INSURANCE CONSULTANTS (PTY), LTD, AFRICA TOURS AND TRAVEL, LLC D/B/A S.A. GUINEA, MOHAMED DIAOUNE AND CLYDE & CO., LLP, | § |
| | § |
| Defendants. | |

**AMENDED COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff sues Defendants and states:

**PARTIES**

1. Plaintiff Aviation One of Florida, Inc. ("Aviation One") is a Florida corporation with its address in Orlando, Florida and brings this action for itself and on behalf of its assignee.

2. Defendant, Airborne Insurance Consultants (PTY), Ltd, describes itself as an "aviation insurance broker based in South Africa," founded by Ryan Forrester and Scott Smith, two aviation brokers; it advertises it is a supplier of "insurance solutions on an international level." It is referred to herein as "Airborne."

3. Defendant Mohamed Diaoune is a resident of the state of Georgia.

4. Defendant Africa Tours and Travel, LLC d/b/a SA Guinee (hereinafter "SA Guinee") is a Georgia limited liability company whose members include Mohamed Diaoune, a resident of Georgia.

5. Defendant, Clyde & Co., LLP, refers to the limited liability partnership, registered in England and Wales and includes partners in the firm, Alex Stovold and Gareth Lewis. It is referred to below as "Clyde & Co."

6. Although not authorized to engage in business in the state, Airborne as agent, bound, issued and delivered a policy of aviation insurance to Florida resident Aviation One in Florida, to insure an aircraft that was in Florida at the time coverage was issued.

7. The subject aircraft was registered and located in a hangar in Volusia County, Florida.

8. Airborne engaged in business correspondence with Aviation One in connection with the procurement of the insurance and servicing of the account, issued and delivered in Florida coverage binders, invoicing and request for payment, a contract of insurance and renewal of the insurance to Aviation One as registered owner of Beech model 1900C aircraft, serial no.: UB-24, registration no.: N218VP (the "1900C").

9. This Court has jurisdiction pursuant to 28 USC section 1332 as the parties include citizens of different States, citizens of a foreign state, and the amount in controversy exceeds $75,000.

10. Venue lies in the Middle District of Florida, where Aviation One resides, payment was due, Plaintiff's loss was suffered, and advice and legal services were provided, under applicable law and contract as set forth below.

11. All conditions precedent to this action have occurred or been waived.

**CONTRACTS**

12. An aircraft lease agreement was entered into between lessee SA Guinee and Aviation One on September 2, 2008, in Florida (the "Lease"). After insurance was procured for the 1900C at SA Guinee's expense in accordance with the Lease, the 1900C was delivered to SA Guinee at Aviation One's hangar in Daytona Beach, Florida. The term of the Lease was 1-year.

13. The Lease was subject to a renewal entered into in Daytona Beach, Florida on September 1, 2009. Copies of the Lease, its renewal and the personal guaranty of same by Defendant, Mohamed Diaoune, are appended hereto as Composite Exhibit "A."

14. At the time of commencement of the Lease and before delivery of the aircraft, Lessee was required to procure insurance, which it did, from Airborne, which binder Airborne delivered to Aviation One in Florida, agreeing to procure insurance to cover all losses as required by the Lease terms. A copy of the binder from Airborne for the initial (August 18, 2008 – August 19, 2009) and renewal (August 18, 2009 – August 17, 2010) coverage is attached as Composite Exhibit "B."

15. The Lease provided, among other things that

- The Agreement shall be construed in accordance with the laws of the United States of America, the State of Florida and Volusia County.
- All disputes shall be settled by judicial proceedings in the County of Volusia, State of Florida.
- Lessee shall not operate the Aircraft nor permit it to be operated in any areas or for any purpose excluded from coverage by any insurance policy.
- The insurance shall provide coverage for a hull value of no less than $1,200,000 US Dollars and liability insurance of $10,000,000 US Dollars.
- Lessee is responsible to pay all expenses associated with adjusting or collecting insurance proceeds.
- Lessee agrees in all respects it has the "responsibility to comply with applicable Federal Aviation Regulations" and other law.
- Lessee agrees it is responsible for payment of any insurance deductible.
- Lessee is responsible to indemnify and hold harmless Aviation One, its officers, directors, agents, owners and assigns from all damages, costs, including legal costs and expenses, without limitation arising out of or connected with Lessee's use or operation of the 1900C.
- The breach of any insurance obligation constitutes a default of Lessee under the Lease.

16. A copy of the Lease was delivered to Airborne. Airborne was requested to obtain insurance coverage in accordance with the Lease. It was also requested to provide a policy that included breach of warranty ("BOW") coverage for the benefit of Aviation One.

17. In August 2008, Aviation One was furnished a copy of the proposed policy which it marked up; and the marked up policy with the reference "help clarify for owner" was furnished to Airborne.

18. Before a policy number was even issued, Aviation One received invoicing that was sent to Aviation One in Florida by Airborne.

19. Issued and delivered in Florida to Aviation One by Airborne was Guardrisk policy of aviation insurance no.: AVD43751 naming "S.A. Guinee and/or Aviation One" as "Insured," for the initial and renewal period August 18, 2008 through August 17, 2010 (the "Policy"). A copy of the Policy is appended to this Complaint as Exhibit "C."[1]

20. Prior to issuance of the policy, Airborne never informed Aviation One that it obtained insurance through Guardrisk because it was the only policy available.

21. The nature of the coverage that Airborne was to secure for Aviation One included that set forth in the policy, "[t]he parties comprising the Insured shall each be considered as a separate and distinct unit and the words 'the Insured' shall be considered as applying to each party and in the same manner as if a separate policy had been issued to each of the parties." See Exhibit "C."

22. The Policy having limits of $10,000,000 U.S., states

> [i]n consideration of the payment of the premium by or on behalf of the insured [Aviation One] prior to the inception date and the insured having by proposal or

---

[1] Guardrisk Insurance Company Ltd. is believed to be a company incorporated in the Republic of South Africa; it is not registered to conduct business in Florida nor is it authorized as an insurer with the state of Florida, Department of Financial Services.

declaration, which shall form the basis of this insurance and is deemed to be incorporated herein, applied to Guardrisk Insurance Company for the insurance hereinafter set out, the insurer agrees subject to the Terms, Conditions, Warranties, Exclusions, Deletions, Definitions, Clauses and limitations contained herein or endorsed hereon, to indemnify or compensate the insured for any physical loss, damage or liability as provided for in the policy but only in respect of an accident (as defined) occurring during the Period of Insurance as stated in the Schedule hereto.

23. The policy covers "loss of or damage to" the 1900C and provides "[i]n each and every event giving rise to a claim [insurer] shall have the sole discretion to pay the insured the total value of the aircraft as stated in the policy … irrespective of whether the aircraft is repairable or a total / constructive loss." Pursuant to the Lease, the "Total Value" is defined to mean the 1900C's "value [as] agreed between the insured and the insurer," here $1,200,000 per the policy and Lease terms. Id.

24. Airborne was from time-to-time advised of additional pilots to be added to the policy. Prior policy renewal on August 18, 2009, Airborne was advised in writing of a new pilot to be added to the policy, Duane Wilson.

25. Attached as Composite Exhibit "D" (Part I and II) is exemplary correspondence concerning business communications and related information Airborne directed to Florida, as well as the action and inaction on the part of Airborne.

26. The renewal for the policy for the second term was sent without the postal code and re-sent by Airborne Insurance to Aviation One at its address in Florida via registered mail.

**1900C CRASH**

27. On September 1, 2009, the 1900C crashed during takeoff from the Lero Mine airstrip in Guinea, West Africa.

28. The 1900C aircraft suffered extensive structural damage and was not repairable. The estimated cost of repair was $1,145,000 US, an amount the insurance investigator noted "virtually equaled the Total Value."

29. At the time of the crash, the plane was being piloted by Duane Wilson.

30. The insurer denied cover because Mr. Wilson was not a listed pilot of the 1900C.[2]

31. The policy did not respond to Aviation One's property loss in Florida under the BOW endorsement that was previously requested via Airborne, coverage that afforded Aviation One additional rights and eliminated coverage defenses; it was confirmed at full hull value, and Airborne subsequently expressly admitted its former employee had failed to procure it. See Exhibit "D."

### AIRBORNE'S ACTIONS POST-CRASH

32. Following Guardrisk's failure to respond under the policy including under the BOW coverage, Airborne Insurance counseled and advised Aviation One regarding its rights under the policy and Aviation One's possible recourse against Guardrisk.

33. Airborne also served as an intermediary between Aviation One and Guardrisk, advocating for Aviation One on its behalf, facilitating correspondence between Aviation One and Guardrisk, and retaining legal counsel to represent Aviation One and Airborne's interests jointly in responding to Guardrisk.

34. Ultimately, Airborne halted efforts to secure coverage and r referred Aviation One, unfamiliar with litigation and acting in reliance on Airborne's statements and advice, to

---

[2] The other issue of runway length was soundly disproved as the runway is 4101', substantially longer than the 1200m specified by the 1900C's manufacturer. Aviation One has maintained the policy should provide coverage; however, it has also suffered and continues to suffer damages outside of the policy's coverage as a result of Airborne's misfeasance and nonfeasance. But for the negligence of Defendants herein, Aviation One would have been timely compensated under the BOW endorsement and incurred minimal loss of use damages, legal fees and costs. .

Airborne counsel, Clyde & Co., attorneys Alex Stovold and Gareth Lewis, whom Airborne claimed were up to speed and maintaining a file in support of Aviation One's claims.

### CLYDE & CO.

35. Airborne's counsel, Messrs. Stovold and Lewis, being fully familiar with the facts and circumstances, never mentioned the possibility or likelihood that Aviation One had a claim against Airborne itself for failing to properly pass on information to the insurer and to procure coverage, including BOW insurance that would have afforded Aviation One significant additional rights and avoided its ongoing damages.

36. Clyde & Co. failed to reveal any conflict, current or potential, and acted in the interest of Airborne in its advice to its client, Aviation One. Clyde & Co. also acted in its own financial interest, invoicing Aviation One for substantial legal fees, including time spent beginning April 10, 2010, before Aviation One retained it, when its lawyers were working for Airborne on the file it identified as "Claims Against Guardrisk Insurance."

### COUNT I
### NEGLIGENCE – AIRBORNE

37. This is an action for negligence with damages in excess of $75,000 against Airborne.

38. Paragraphs 1 through 36 and the Exhibits are incorporated by reference herein.

39. Airborne was the agent of the Plaintiff, Aviation One and its lessee at the time coverage was requested for the 1900C, including coverage limits pursuant to the Lease and a "BOW," or "breach of warranty" endorsement to cover the full hull value in the event of loss.[3] See Exhibit "D."

---

[3] In the alternative, if Airborne contends it is not the agent of Aviation One it is still liable for its negligent conduct. An aircraft breach of warranty endorsement, as the name implies, provides coverage even where it is contended the insured breached or voided the insurance contract.

7

40. Airborne was further fully advised of additional pilots that were to be added to the policy, including, but not limited to, Duane Wilson, who was piloting the 1900C at the time of the crash.

41. Airborne negligently furnished a policy of insurance from an insurer not authorized to insure a loss in Florida.

42. Airborne was negligent in completing the policy paperwork, failing to include the BOW coverage in the renewal policy provided to Aviation One.

43. Airborne entrusted Defendant-Airborne to adequately, appropriately, correctly and properly procure the desired coverages.

44. As insurance agent, Airborne owed a duty to Aviation One to perform the services in a reasonable manner in compliance with the standard of care of a reasonable competent insurance agent.

45. While Airborne purports to have obtained approval from SA Guinee on various binders, Airborne failed to obtain approval of Aviation One. In addition, as the self-proclaimed expert in aviation insurance, Aviation One reasonably relied on Airborne to comport with its duty competently obtain insurance in accordance with the Lease (which Airborne was provided from the outset) and the parties' requests, including Aviation One's request for BOW insurance in the full hull value.

46. The insurer has failed and refused to provide insurance benefits to Aviation One due to its contention that coverages were not requested on behalf of Aviation One by Airborne and that the policy was voided by its failure to report new pilots, information that was provided to Airborne.

47. Any omissions of requests for, or requirements of, coverage are a direct result of Airborne's negligent breach of its duty to properly procure the coverage.

48. As a result of Airborne's negligence, Aviation One has been damaged in the amount of the insurance proceeds that Aviation One would have received, but for the negligence of Defendant Airborne.

49. Additional damages as a direct consequence of Airborne's negligence consist of

 (a) the damages associated with the failure to procure BOW coverage, including loss of use, interest, legal fees and costs in pursuit and defense of third-party claims, transportation and storage charges;

 (b) legal fees and costs in pursuing claims in South Africa, as Airborne's negligent conduct and counsel caused Aviation One to become embroiled in litigation there ;

 (c) loss of income damages as the lack of coverage and ongoing delay left Aviation One unable to procure a replacement aircraft; and

 (d) miscellaneous other costs and expenses incurred as a direct result of the failure of coverage and related events due to.

50. Airborne is liable for the damages suffered by Aviation One and despite demand it has failed and refused to satisfy Aviation One's loss.

WHEREFORE, Aviation One prays for an award of damages, including consequential damages, damage for loss of use, prejudgment interest, legal fees and costs incurred as a result of claims against third parties, and legal costs in pursuing its claims against Defendant, Airborne.

### COUNT II
### BREACH OF FIDUCIARY DUTY – AIRBORNE

51. This is an action for breach of fiduciary duty with damages in excess of $75,000 against Airborne.

52. Paragraphs 1-36, 39-47 and the Exhibits are incorporated by reference herein.

53. Airborne was the broker and agent of the Aviation One and its lessee at the time coverage was requested for the 1900C, including coverage limits pursuant to the Lease and a "BOW," or "breach of warranty" endorsement to cover the full hull value in the event of loss.

54. Following the crash, Airborne assumed the role of counselor and advisor to Aviation One regarding its rights under the policy, served as Aviation One's representative in communications with Guardrisk, and ultimately obtained legal counsel, whom it advised Aviation One was fully advised in the premises and it encouraged Aviation One to confer with to confirm Airborne's contention that Guardrisk should cover the claims and could be expeditiously persuaded to do so.

55. Aviation One relied on Airborne's expertise to advise Aviation One and its Lessee on its coverage needs pursuant to the Lease, and placed its trust and confidence in Airborne to obtain the necessary coverage for Aviation One and its Lessee, including breach of warranty.

56. Following the crash, Aviation One relied on Airborne to advise Aviation One of its rights under the policy and possible recourse against Guardrisk, which activities were undertaken by Airborne.

57. Aviation One, unfamiliar with litigation, reasonably relied on the course of action directed by Airborne, who represented itself as informed and experienced regarding aviation insurance in general and the matters faced in regard to Aviation One's claim in particular.

58. Airborne emailed direction to Aviation One to prepare a letter containing certain statements, which Aviation One did in reliance on Airborne's advisement, and provided same to Airborne. Thereafter, Airborne undertook to present the letter it requested from Aviation One in Florida to Guardrisk.

59. Aviation One further reasonably relied on Airborne to advocate during meetings between Airborne and Guardrisk and in communications to Guardrisk and consulted with counsel Airborne indicated it had procured to pursue coverage to which Aviation One and its Lessee were entitled, Alex Stovold of Clyde & Co., a lawyer that Airborne indicated that Aviation One could rely on as fully advised in the premises.

60. Airborne, as insurance broker, and by virtue of Airborne's special relationship with Aviation One, owed a fiduciary duty to Aviation One as insured.

61. Airborne breached its fiduciary duty owed to Aviation One in Florida by:

   a) failing to fully inform Aviation One of all the material facts within Airborne's knowledge affecting the insurance policy, including but not limited to the fact that the Guardrisk policy was the only policy available;

   b) failing to exercise reasonable skill and diligence in obtaining and maintaining insurance for Aviation One;

   c) failing to obtain coverage as required by the Lease and as explicitly requested, including the breach of warranty endorsement that afforded Aviation One additional rights and benefits;

   d) failing to inform Aviation One of its lack of coverage under the policy it procured;

   e) assuming representation of Aviation One in pursuing coverage for its loss with the knowledge Airborne was at fault for negligence in its maintenance and renewal of the policy and in failing to secure the breach of warranty endorsement;

   f) failing to inform Aviation One of all material facts that could affect Aviation One's ability to obtain coverage, including Airborne's conflicting interests with Aviation One;

    g) hiring Airborne's legal counsel, Clyde & Co., and directing Aviation One to consult with and retain the firm, knowing Alex Stovold was also representing Airborne's interests; and,

    h) referring Aviation One to attorneys at Clyde & Co. even after Airborne halted pursuit of coverage from Guardrisk.

62. As a result of Airborne's negligence, Aviation One has been damaged in the amount of the insurance proceeds that Aviation One would have received, but for the negligence of Defendant Airborne.

63. Additional damages as a direct consequence of Airborne's negligence consist of

    (a) the damages associated with the failure to procure BOW coverage, including loss of use, interest, legal fees and costs in pursuit and defense of third-party claims, transportation and storage charges;

    (b) legal fees and costs in pursuing claims in South Africa, as Airborne's negligent conduct and counsel caused Aviation One to become embroiled in litigation there ;

    (c) loss of income damages as the lack of coverage and ongoing delay left Aviation One unable to procure a replacement aircraft; and

    (d) miscellaneous other costs and expenses incurred as a direct result of the failure of coverage and related events due to.

64. Airborne is liable for the damages suffered by Aviation One and despite demand has failed and refused to satisfy Aviation One's loss.

WHEREFORE Aviation One prays for judgment against Airborne in the full amount of its damages, including attorney's fees and costs as set forth above, consequential damages, damage for loss of use, legal fees and costs for third-party claims and interest and legal costs in this action.

<u>**COUNT III**</u>
**COMMON LAW INDEMNITY – AIRBORNE**

65. This is an action for common law indemnity against Airborne with damages in excess of $75,000.

66. Paragraphs 1-36, 39-50 and 53-64 and the Exhibits are incorporated by reference.

67. Aviation One is wholly without fault in this action and it has incurred damages and obligations to pay legal fees and costs, travel and transportation expenses, loss of use damages, and sums owed to the third-party lender on the 1900C solely as a result of Airborne's multiple acts of negligence and negligent omissions in securing insurance for Aviation One and breaching its fiduciary duty to Aviation One, as described herein.

68. But for the negligent conduct of Airborne, Aviation One would not have been caused to incur expenses or suffered damages, including damage due to loss of use of the aircraft.

69. Aviation One is entitled to indemnity from Airborne and Airborne is liable for its damages, including consequential damages, legal fees and costs incurred in attempting to pursue claims against third-parties and defend claims, required as a result of Airborne's negligence and breach of fiduciary duty owed to Aviation One.

WHEREFORE Aviation One prays for indemnification for its damages, including actual and consequential damages, damages for loss of use, transportation and storage costs, legal fees and costs in regard to third-party claims, interest and its costs herein.

## COUNT IV
## PROFESSIONAL NEGLIGENCE – CLYDE & CO.

70. This is an action for professional negligence against the firm of Clyde & Co., based on services rendered by its partners, Alex Stovold and Gareth Lewis (collectively "Clyde & Co.")

71. Paragraphs 1-36, 39-46, 53-61 and the Exhibits are incorporated by reference.

72. Exhibit "E" is a letter of April 29, 2010, received from Clyde & Co. regarding the terms of its engagement to provide advice and legal counsel to Florida resident Aviation One regarding its property loss in Florida arising from the 1900C7.

73. Pursuant to Exhibit "E," Clyde & Co. affirmatively states that it has no conflict of interest that would preclude its competent representation of the interests of Aviation One.

74. In reasonable reliance upon the representations of Clyde & Co., Aviation One paid to the law firm legal fees and costs of $262,500, incurring $283,547 US as of the end of 2012 and continuing thereafter.

75. Being inexperienced in litigation, and particularly in regard to international matters and claims in South Africa, Aviation One had no knowledge that Clyde & Co. was doing anything other than providing it with aggressive, competent legal representation in an effort to recover damages suffered by Aviation One due to its property loss in Florida. As Clyde & Co. was aware, Aviation One's primary asset was the 1900C aircraft it owned and leased, receiving approximately for $30,000 per month, and without the aircraft, Aviation One was struggling to finance the litigation. As the amounts billed and time passing substantially exceeded Clyde & Co.'s initial estimate with no collection of any of Aviation One's losses, Aviation One became increasingly concerned.

76. A number of events caused Aviation One to further investigate, e.g.:

   a. Clyde & Co. proposed moving forward by charging an "uplift" in exchange for deferring payment of a portion of its mounting fees and since Aviation One had been advised that the claims being pursued by Clyde & Co. did not include its attorney's fees, and it was continuing to accrue loss of use damages monthly, it questioned whether the ultimate outcome would come close to compensating it;
   b. Aviation One's suggestion that fewer than two (2) or four (4) lawyers handle various matters to save on expenses was discouraged and ultimately ignored;
   c. Clyde & Co. sent correspondence referring to a number of experts it wanted to retain, including in regard to Florida law, details previously unmentioned in a case that Clyde & Co. had continuously maintained was relatively simple and straightforward;

    d. Having paid $262,500 in legal fees exclusive of costs based on invoicing Clyde & Co. sent to its client in Florida, Aviation One discovered that Clyde & Co. had yet to obtain (and therefore could not furnish upon request) any discovery whatsoever from the insurer concerning its purported defenses and third-party action against its underwriter.

    e. Upon inquiry into matters of costs and billing, Aviation One was charged for attorney time responding to billing inquiries for multiple attorneys at regular billing rates.

77. As a result of the foregoing, Aviation One requested records to be sent to its counsel in Florida, which firm, upon finally receiving them and requesting additional records (each time with delay in response) and upon conferring with Clyde & Co., discovered it appeared the firm had failed to pursue claims that included rights not available to Aviation One in claims against the insurer, including amounts that would never be recoverable against Guardrisk.[4]

78. It further appeared that the necessity of incurring more than $300,000 U.S. in legal fees and costs (combined paid and outstanding) was doubtful where the BOW endorsement Aviation One requested and Airborne agreed to provide would have resolved the entire matter.

79. Clyde & Co. failed to advise Aviation One, its new client, of a less expensive, more direct, faster and more certain method of recovery against its existing client, also acting for its own financial gain based on the substantial fees it billed and was paid by Aviation One.

80. The events described above in regard to failure to procure and maintain coverage and matters related thereto by Airborne became apparent, along with Clyde & Co.'s failure to pursue any discovery whatsoever from the insurer that may well have further exposed them. At no time through the present did Clyde & Co. disclose its material conflict of interest, of which Aviation One was unaware.

81. The losses resulting from Clyde & Co.'s negligent provision of professional services in breach of its duty to Aviation One include, but are not limited to, the following:

---

[4] Clyde & Co. contracted directly with its affiliated South African counsel.

    a. Failure to bring suit against its other client, Airborne, despite its negligence, including in procuring BOW insurance that would have afforded Aviation One significant additional rights and remedies and avoided defenses of the insurer, Guardrisk.
    b. Failing to advise Aviation One of its rights and remedies in regard to the negligent procurement of insurance by Airborne and the legalities and facts concerning same.
    c. Failing to disclose to Aviation One that it all times operated with a material conflict of interest that adversely implicated the advice it provided and, therefore, that it failed to properly, professionally, adequately or completely protect the interests of Aviation One.

82. Specifically in regard to conflicts of interest, Rule 3 of the Soliciter's Code of Conduct governs Clyde & Co. and contains the following provisos:[5]

- Rule 3.01 Duty not to act

(1) You must not act if there is a conflict of interests (except in the limited circumstances dealt with in 3.02).
(2) There is a conflict of interests if:
(a) you owe, or your firm owes, separate duties to act in the best interests of two or more clients in relation to the same or related matters, and those duties conflict, or there is a significant risk that those duties may conflict; or
(b) your duty to act in the best interests of any client in relation to a matter conflicts, or there is a significant risk that it may conflict, with your own interests in relation to that or a related matter.
(3) For the purpose of 3.01(2), a related matter will always include any other matter which involves the same asset or liability.

- 3.02 Exceptions to duty not to act

(1) You or your firm may act for two or more clients in relation to a matter in situations of conflict or possible conflict if:
(a) the different clients have a substantially common interest in relation to that matter or a particular aspect of it; and
(b) all the clients have given in writing their informed consent to you or your firm acting.
(2) Your firm may act for two or more clients in relation to a matter in situations of conflict or possible conflict if:
(a) the clients are competing for the same asset which, if attained by one client, will make that asset unattainable to the other client(s);
(b) there is no other conflict, or significant risk of conflict, between the interests of any of the clients in relation to that matter;

---

[5] The SRA Handbook and Code has been in force since 6 October 2011. Accordingly, the 2007 Code and all of its rules no longer apply to solicitors' conduct, save in respect of any conduct taken prior to 6 October 2011 to which the 2007 Code will still be applied. Rule 3 of the 2007 Code was amended March 31, 2009, prior to Exhibit "E" and the amended to Rule 3 is cited above.

(c) the clients have confirmed in writing that they want your firm to act in the knowledge that your firm acts, or may act, for one or more other clients who are competing for the same asset; and

(d) unless the clients specifically agree, no individual acts for, or is responsible for the supervision of, more than one of those clients.

(3) When acting in accordance with 3.02(1) or (2) it must be reasonable in all the circumstances for you or your firm to act for all those clients.

(4) If you are relying on the exceptions in 3.02(1) or (2), you must:

(a) draw all the relevant issues to the attention of the clients before agreeing to act or, where already acting, when the conflict arises or as soon as is reasonably practicable, and in such a way that the clients concerned can understand the issues and the risks involved;

(b) have a reasonable belief that the clients understand the relevant issues; and

(c) be reasonably satisfied that those clients are of full capacity.

Therefore, in regard to Aviation One, Clyde & Co. violated Rule 3.

83. Clyde & Co. was negligent in providing legal services to Aviation One, including violating multiple provisions of the ethical rules that cannot be waived and govern its conduct.

84. As a result of the negligent provision of legal services by Clyde & Co. to Aviation One in Florida, Aviation One has suffered and continues to accrue damages, including actual and consequential damages, loss of use damages, and attorney's fees and costs in pursuit of third-party claims for which Clyde & Co. is liable.

WHEREFORE Aviation One prays for judgment for damages, including consequential damages, damages for loss of use, disgorging of attorney's fees and costs paid to Clyde & Co., reimbursement for attorney's fees and costs in pursuit of third-party claims, interest and legal costs against Clyde & Co.

## COUNT V
### BREACH OF GUARANTEE – MOHAMED DIAOUNE

85. This is an action for damages against Mohamed Diaoune for breach of guarantee with damages in excess of $75,000.

86. Paragraphs 1-36 and Exhibits are incorporated by reference.

87. SA Guinee defaulted in performing under the Lease.

88. Mohamed Diaoune guaranteed all obligations of SA Guinee under the Lease.

89. Pursuant to the Guaranty attached as part of Composite Exhibit "A," Mr. Diaoune is personally liable for damages suffered, the insurance deductible, consequential damages, and loss of use damages, legal fees and costs incurred by Aviation One.

90. Mr. Diaoune has failed to make payment in satisfaction of his obligations under the Guaranty.

WHEREFORE Aviation One prays for judgment for damages, including consequential damages, interest, legal fees and costs against Mohamed Diaoune.

## COUNT VI
## BREACH OF LEASE - SA GUINEE

91. This is an action for damages and contractual indemnity pursuant to the Lease.

92. Paragraphs 1-36 and Exhibits are incorporated by reference.

93. SA Guinee breached the Lease in failing to make payment of rents to Aviation One.

94. In addition, SA Guinee has failed to indemnify Aviation One as required by the terms of the Lease, resulting in damage to Aviation One in the form of costs and expenses in attempting to cover its loss.

95. SA Guinee also failed to tender payment of the insurance deductible as required by the Lease.

96. As a direct result of SA Guinee's failure to make payment pursuant to the Lease, Aviation One has suffered damages, including consequential damages and loss of use, for which sums SA Guinee is liable.

97. In addition to damages, SA Guinee is liable for attorney's fees and costs incurred in pursuing its claims and in bringing this action, pursuant to the terms of the Lease.

WHEREFORE, Aviation One prays for judgment for damages, including consequential damages, prejudgment interest, attorney's fees and legal costs against Defendant SA Guinee.

## DEMAND FOR JURY TRIAL

Aviation One demands trial by jury.

## CERTIFICATE OF SERVICE

I certify on the date below I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) to John P. O'Flanagan, Esquire, attorney for Defendant, Airborne Insurance Consultants (PTY), Ltd. In addition, a copy of the foregoing and exhibits has been furnished by U.S. Mail and email to Mohamed Diaoune, 1955 Henderson Way, Lawrenceville, GA 30043, *self-represented.*

DATED: 16 May 2014

Respectfully submitted,

  s/Rosemary Hayes
Rosemary Hanna Hayes, B.C.S.
Florida Bar no. 549509
Meredith Sasso
Florida Bar no. 58189
HAYES LAW, PL
830 Lucerne Terrace
Orlando, FL 32801
rhayes@const-law.com
tcochran@const-law.com
Tel. 407.649.9974, ext. 214
Fax 407.649.9379

**ATTORNEYS FOR PLAINTIFF
AVIATION ONE OF FLORIDA, INC.**