## THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

AVIATION ONE OF FLORIDA, INC.,

        Plaintiff,

vs.

                                       CASE NO.: 6:13-cv-01243-Orl-41DAB

AIRBORNE INSURANCE CONSULTANTS
(PTY), LTD, AFRICA TOURS AND TRAVEL,
LLC D/B/A S.A. GUINEA, MOHAMED
DIAOUNE AND CLYDE & CO., LLP,

        Defendants.

_____/

## DEFENDANT AIRBORNE INSURANCE CONSULTANTS (PTY), LTD'S MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND INCORPORATED MEMORANDUM OF LAW

Defendant Airborne Insurance Consultants (Pty), Ltd ("Airborne"), appearing specially and not generally, hereby moves pursuant to Federal Rule of Civil Procedure 12(b)(2) that it be dismissed from this action for lack of personal jurisdiction and states:

### INTRODUCTION

This case arises from Airborne's alleged negligent behavior in procuring an aircraft insurance policy. In this case, Plaintiff leased its aircraft to Africa Tours & Travel d/b/a S.A. Guinea ("S.A. Guinea"). S.A. Guinea (a Georgia citizen) then contacted Airborne, a South African insurance broker, to assist in procuring insurance coverage for the aircraft while the aircraft was operating out of Guinea, West Africa. Airborne subsequently arranged for a policy for the aircraft with Guardrisk Insurance Company ("Guardrisk"), a registered South African insurance company. The following year, S.A. Guinea—while based in West Africa—used Airborne to procure a renewal policy through Guardrisk.

The coverage in the renewal policy was limited to "the Continent of Africa" and did not

insure the aircraft for any risks in Florida. Under both policies, Airborne sent S.A. Guinea the invoices and S.A. Guinea, not Plaintiff, made all of the policy payments. Two weeks after Guardrisk issued the renewal policy, the aircraft crashed in Guinea, West Africa. The insurer—Guardrisk—denied coverage based on various policy exclusions. It was only after Guardrisk issued the policies and after the aircraft crashed that Airborne had any communications with Plaintiff (the Florida resident). Plaintiff has now sued Airborne and asserted claims of agent negligence, breach of fiduciary duty, and common-law indemnity arising from Airborne's actions in procuring the renewal policy and in allegedly counseling and advising Aviation One regarding its rights under the policy.

This Court, however, does not have jurisdiction over Airborne under the long-arm statute. Airborne never received money from a Florida entity nor solicited a Florida client. Plaintiff was the passive owner of the aircraft and had no relationship with Airborne except for a few months following the insurer's denial of the claim.[1] Airborne did not "commit a tort" in Florida because all of Airborne's allegedly improper conduct underlying the negligence claim was directed toward Georgia and West Africa and took place in South Africa, not Florida. Airborne's minimal Florida communications following the crash do not constitute committing a tort in Florida. Moreover, Airborne did not "contract to insure" property or a risk in Florida (or any risk at all) because it is not an insurer and because coverage under the renewal policy was limited to the

---

[1] For the Court's information, Plaintiff has sued the insurance company, Guardrisk, in South Africa for this same accident. In that suit, Plaintiff has made many representations to the court which contradict Plaintiff's allegations of personal jurisdiction in this case, to wit: (1) S.A. Guinea requested Airborne to obtain quotes from the insurance market for insurance; (2) at all material times, Airborne "acted as insurance broker on behalf of" and obtained the policy on behalf of S.A. Guinea; (3) Airborne obtained a quote from Guardrisk for cover; (4) *Guardrisk* agreed to insure the aircraft once the quote was accepted by S.A. Guinea; and (5) Guardrisk "issued to" S.A. Guinea and Plaintiff the policy of insurance. *See Aviation One of Fla., Inc. v. Guardrisk Ins. Co. Ltd.*, In the North Gauteng High Court, Pretoria (Republic of South Africa), Particulars of Claim ¶¶ 8–12, attached hereto as Ex. "1".

continent of Africa. Airborne also did not carry on a business venture in Florida and received no money from any Florida resident. Finally, assuming long-arm jurisdiction exists, asserting jurisdiction over Airborne would violate due process.

## BACKGROUND

### A.     Factual Background

Plaintiff entered into an aircraft Lease with S.A. Guinea for the lease of a Beach model 1900C aircraft (the "Aircraft"). Amended Complaint ¶ 12, Dkt. 67. Under this Lease, S.A. Guinea was required to secure and maintain insurance coverage for the Aircraft. *Id.*; Am. Compl. Ex. A, at ¶ 5. Pursuant to its obligations under the Lease, S.A. Guinea subsequently contacted Airborne[2] to procure an insurance policy for the Aircraft. Am. Compl. ¶ 14; Affidavit of Deborah Ray, attached as Ex."2"; Supplemental Affidavit of Deborah Ray, attached as Ex. "3".

In response, Airborne sent S.A. Guinea an Aviation Insurance Quotation describing a policy that would cover the Aircraft's operations from August 2008 to August 2009. Am. Compl. Ex. B, at 21 (the "Quotation"). This Quotation informed S.A. Guinea that coverage would be through a Guardrisk Insurance Company Policy, and asked S.A. Guinea to sign and acknowledge that the information in the Quotation was accurate and that coverage had been arranged in accordance with S.A. Guinea's requirements. *Id.* at 22, 24. After S.A. Guinea signed the Quotation, Guardrisk issued a Policy for the Aircraft, and both S.A. Guinea and Plaintiff were named as insureds. Airborne sent S.A. Guinea all of the invoices for the Policy and S.A. Guinea paid the premiums. Am. Compl. ¶ 12; Ray Aff. ¶ 21.

For that next year, S.A. Guinea operated a charter service out of Guinea, West Africa.

---

[2] Airborne is an aviation insurance broker based in South Africa, it is not an insurance company. Am. Compl. ¶ 2. Airborne does not issue or underwrite insurance policies, and it functions as a regulated insurance broker.

Am. Compl. Ex. B, at 25. S.A. Guinea again approached Airborne, this time about obtaining a renewal policy. *See* Am. Compl. Ex. D. Airborne subsequently sent S.A. Guinea an "Aviation Insurance Renewal Indication Quote." Am. Compl. Ex. B, at 33 (the "Renewal Quotation"). In this Renewal Quotation, the "geographical limits" of the proposed coverage is limited to "[t]he Continent of Africa." *Id.* at 33. In addition, the "Main Area of Operation" is "Guinea, West Africa," and the Aircraft is listed as "Based" in West Africa. *Id.* at 35. The Renewal Quotation states that the coverage would be through Guardrisk. *Id.* at 33. The Renewal Quotation also lists the pilots as Curtiss Robert Seal and Ryan Losser, and affirms that there is no Breach of Warranty ("BOW") Coverage. *Id.* at 34.

Once again, S.A. Guinea, acting as Plaintiff's agent, signed the Renewal Quotation and confirmed that it read and understood the quotation and that the information was "accurate and that coverage has been arranged entirely in accordance with [its] requirements." *Id.* at 36. S.A. Guinea also signed a "Confirmation of Terms and Placement of Insurance" where it confirmed "that the insurance is correct as per [its] requirements." *Id.* at 42. Once S.A. Guinea signed the Renewal Quotation, Guardrisk issued the Renewal Policy. *See* Am. Compl. Ex. C. In the Renewal Policy it states that the "Geographical Limits" of the Policy are "The Continent of Africa." *Id.* at 46. In addition, the Policy has a forum selection and choice of law provision which states that the Policy is governed by the law of the Republic of South Africa, which "shall have" jurisdiction in any dispute under the Policy. *Id.* at 69. Airborne sent S.A. Guinea all of the invoices for the Renewal Policy and S.A. Guinea paid all of the premiums, often wiring the payments from Guinea, West Africa. *See* Am. Compl. ¶ 13; Am. Compl. Ex. D, at 102.

Two weeks after Guardrisk issued the Renewal Policy, on September 1, 2009, the Aircraft crashed in West Africa. Am. Compl. ¶ 27. At the time of the crash, Duane Wilson and

First Officer M. O'Diallo were piloting the Aircraft. *Id.* at ¶ 29; Am. Compl. Ex. D, at 112. When S.A. Guinea tendered the claim for payment by Guardrisk, Guardrisk denied the claim because: (1) Pilot D. Wilson and First Officer M. O'Diallo were not included on the list of approved pilots in the schedule to the Insurance Agreement; (2) there was no coverage while the aircraft was landing or taking off from a place which does not comply with the recommendations of the manufacturer; and (3) the Insurance Agreement was breached since S.A. Guinea/Plaintiff failed to comply with the Civil Air Regulations regarding take-off distances and "accelerate-stop" distances. *Id.* at 112–13.

After Guardrisk denied the claim, Plaintiff alleges that Airborne counseled and advised Plaintiff regarding its rights under the policy and Plaintiff's possible recourse against Guardrisk. Am. Compl. ¶ 32. Plaintiff claims Airborne acted as an intermediary between Plaintiff and Guardrisk, and retained legal counsel to represent Plaintiff's and Airborne's interests jointly. *Id.* at ¶ 33. Plaintiff further alleges that Airborne ultimately referred Plaintiff to the law firm Clyde & Co., *id.* at ¶ 34, and that Clyde & Co. (1) never advised Plaintiff that it may have a claim against Airborne and (2) failed to reveal any current or potential conflict of interest.

Based on these facts, Plaintiff has sued Airborne. In Count I, Plaintiff claims Airborne was Plaintiff's "agent" and was negligent in (1) furnishing a policy of insurance from an insurer not authorized to insure a loss in Florida and (2) completing the policy paperwork, including failing to add BOW Coverage in the renewal Policy.[3] *Id.* at ¶¶ 37–42. In Count II, Plaintiff alleges a claim for breach of fiduciary duty arising from Airborne's actions as Plaintiff and S.A.

---

[3] Plaintiff also states Airborne was "fully advised of additional pilots that were to be added to the policy, including, but not limited to, Duane Wilson." Am. Compl. ¶ 24. This allegation, however, should be stricken and cannot form the basis of any liability against Airborne as a matter of law since in Exhibit D to the Amended Complaint, which controls over the Complaint's allegations, it is admitted that S.A. Guinea never requested that Airborne add First Officer M. O'Diallo to the Policy nor sent Airborne the appropriate paperwork to include Duane Wilson.

Guinea's "broker and agent" and from Airborne's alleged assumption of the role of "counselor and advisor" to Plaintiff after the crash. *Id.* at ¶¶ 53–54. In Count III, Plaintiff asserts a claim for common law indemnity, claiming that Plaintiff has incurred indemnifiable damages for "legal fees and costs, travel and transportation expenses, loss of use damages, and sums owed to the third-party lender" on the Aircraft. *Id.* at ¶ 67.

In the Amended Complaint, Plaintiff attempts to assert jurisdiction over Airborne. However, all of Plaintiff's "Jurisdictional Allegations and Facts" are insufficient to confer personal jurisdiction or are baseless allegations which are refuted by the Amended Complaint's Exhibits[4] and the affidavits of Deborah Ray. For example, Airborne never "issued and delivered" the Policy or Renewal Policy in Florida. *See* Ray Aff. ¶¶ 18–20. In addition, Airborne never made telephonic, electronic, or written communications to Plaintiff in Florida until after Guardrisk issued the Renewal Policy and after the Aircraft crash. *Id.* at ¶ 18. Plaintiff was never involved in the procurement of either the Policy or the Renewal Policy. *Id.* at ¶¶ 17–20, 22; Am.Compl. Ex. D II, at 169 (correspondence from Plaintiff stating that S.A. Guinea was responsible for securing and maintaining the insurance coverage on the Aircraft). Not only did Airborne never communicate with Plaintiff, the Florida resident, regarding procuring the coverage, Airborne also did not communicate with Plaintiff regarding the "servicing" of the account. Ray Aff. ¶¶17–19, 21–22. Indeed, Airborne never communicated with Plaintiff (the Florida corporation) prior to the Aircraft accident at issue. *Id.*; Am. Compl. Ex. D.

---

[4] "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *See, e.g., Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Cucinotta v. CVS Pharmacy, Inc.*, No. 8:12-CV-1194-T-33AEP, 2012 WL 5467524, at *3–4 (M.D. Fla. Nov. 9, 2012) (granting Motion to Dismiss based on exhibit that contradicted allegations in the complaint).

Instead, Airborne communicated solely with S.A. Guinea, an alleged Georgia citizen, through email communications while S.A. Guinea was located in Georgia and West Africa. *Id.* All negotiations and communications related to the procurement of the coverage through Guardrisk occurred between S.A. Guinea and Airborne. Ray Aff. ¶¶ 17–20. There was no expectation that any aspect of the procurement of the policy would be performed in Florida, including payment therefor. *Id.* at ¶ 20. Airborne sent all invoices to S.A. Guinea, who often paid the premiums via wire transfer from Guinea, West Africa. Am. Compl. Ex. D, at 93; 102.

After the crash, Airborne again communicated with S.A. Guinea regarding the policy. Airborne had minimal contact with Plaintiff, and it is apparent that as early as October 2009, Plaintiff was on notice that its interests were adverse to Airborne. First, S.A. Guinea forwarded Airborne's emails regarding the pilot and BOW issue to Plaintiff. *See id.* at 91–99; 100–103. Then, in November, Airborne discussed the BOW issue with S.A. Guinea. *Id.* at 81. S.A. Guinea immediately copied Plaintiff on this email. *Id.* In addition, during this time Plaintiff consulted an attorney regarding the situation, and went so far as to forward correspondence between Airborne and S.A. Guinea to this attorney. *See* AO_001002–03_R26; AO_001053_R26; attached hereto as composite Ex. "4. Then, over two months before Plaintiff hired Clyde & Co., another attorney advised Plaintiff that Airborne may be liable. Specifically, on February 11, 2010, S.A. Guinea— through its attorney Jeffrey F. Clement, a Chicago Aviation Attorney—sent Airborne a letter to put Airborne on notice of a potential errors and omissions claim against Airborne. *See* Am. Compl. Ex. D, at 137–47.

In this letter, the attorney advised Airborne that they may be liable for (1) failing to include the pilot on the renewal policy and (2) failing to procure BOW coverage. *Id.* This letter stated: "[U]nless you can convince the underwriters to honor and pay this loss without further

delay, please put your E&O carrier on <u>notice</u> of this claim. . . . Failing a timely solution, litigation will follow." *Id.* at 140. Attached to the letter were the various emails between Airborne and S.A. Guinea regarding the pilot and BOW issues. *See id.* The attorney also forwarded a copy of this letter to Plaintiff. *See id.* at 137. The attorney again contacted Airborne on March 26, 2010, and copied Plaintiff. *Id.* at 182–184. Plaintiff hired Clyde & Co. in April 2010. Am. Compl. Ex. E. at 186.

## LEGAL STANDARD

In diversity cases, personal jurisdiction over a nonresident defendant exists when (1) the defendant is within the reach of Florida's long-arm statute, Fla. Stat. § 48.193; and (2) the defendant has sufficient minimum contacts with Florida so that maintenance of the suit does not offend "'traditional notions of fair play and substantial justice'" in violation of due process. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The long-arm statute must be strictly construed, *Sculptchair*, 94 F.3d at 627, so doubts about the applicability of the statute should be resolved in favor of Airborne.

Here, Plaintiff attempts to plead specific jurisdiction, not general jurisdiction, over Airborne. Plaintiff, therefore, has the initial burden to allege sufficient jurisdictional facts to bring Airborne within Florida's long-arm statute. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). It has not done so. Further, because Airborne has provided affidavit evidence that Fla. Stat. § 48.193 does not apply, Plaintiff now must prove that long-arm jurisdiction is proper through record evidence. *Id.* (affirming dismissal of complaint for lack of personal jurisdiction, based in part on the defendant's affidavit). If the plaintiff fails to do so, the court should grant the defendant's motion to dismiss. *See id.*

**ARGUMENT**

I.  **THERE IS NO SPECIFIC JURISDICTION OVER AIRBORNE UNDER FLORIDA'S LONG-ARM STATUTE**

In order to establish specific personal jurisdiction, Plaintiff must demonstrate that its cause of action is causally connected to Airborne's actions within the state. As explained by Florida courts, this "connexity" requirement means that Plaintiff's causes of action must be connected to a specific act committed in Florida. *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 902 (M.D. Fla. 2007). As explained below, Plaintiff has not properly alleged that *any* portion of § 48.193 applies, and, even if it had, Airborne has refuted those allegations with record evidence. Thus, this Court should quash service of process and dismiss Airborne.

A.  **Airborne did not engage in a business venture in Florida, Fla. Stat § 48.193(1)(a)(1)**

There can be jurisdiction under Fla. Stat. § 48.193(1)(a)(1.) if an entity operates, conducts, engages in or carries on a business or business venture in the state, or has an office or agency in the state. Plaintiff must show that when considered collectively, Airborne's activities "'show a general course of business activity in the State *for pecuniary benefit.'"* *Fraser v. Smith*, 594 F.3d 842, 848 (11th Cir. 2010) (quoting *Dinsmore v. Martin Blumenthal Assocs. Inc.*, 314 So. 2d 561, 564 (Fla. 1975)). Here, Plaintiff has not alleged that Airborne operated, conducted, engaged in, or carried on a business or business venture in Florida. Nor has Plaintiff alleged facts to show that Airborne operated a business venture in Florida or engaged in a general course of business activity here for pecuniary benefit. In particular, Airborne never sent a representative to Florida, a factor that is often dispositive, and Airborne never received money from a Florida entity, including Plaintiff. Supp. Ray Aff. ¶ 5.

Airborne is a South African corporation which operates in South Africa. Ray Aff. ¶ 4. It does not maintain a place of business in Florida and "conducts no business" in Florida. *Id.* at ¶¶

5, 8. It has no employees, offices, or property in Florida. *Id.* at ¶¶ 6, 9–10. It does not generate revenue, pay taxes, or hold liens or mortgages in Florida. *Id.* at ¶¶ 10–13. Airborne also does not advertise, solicit, or provide service activities in Florida. *Id.* at ¶¶ 14–15. The only connection with Florida is that Plaintiff, a named insured on the Guardrisk Policy, is located in Florida, and that Airborne had limited communications with Plaintiff following the subject crash. This is insufficient to say that Airborne was engaged in a business or business venture in Florida because Airborne dealt with S.A. Guinea, which was located in Georgia and West Africa. Airborne never sent invoices to Plaintiff or accepted any money from Plaintiff, and instead S.A. Guinea paid the policy premiums from West Africa. Am. Compl. ¶ 12; *Id.* at Ex. D, at 102.

Airborne did not send any invoices to Plaintiff at all, let alone to Plaintiff in Florida. Supp. Ray Aff. ¶ 5. Instead, Airborne emailed the invoices to S.A. Guinea, and included on the invoice the address Airborne had on file for S.A. Guinea. *Id.* at ¶¶ 5–6. Airborne never mailed the invoices to Florida, just like Airborne never "bound, issued, and delivered" a policy to Florida. *Id.* at ¶ 6. Airborne also never engaged in business correspondence and communications with Plaintiff prior to the policy renewal. In fact, the only instance in which Airborne and Plaintiff had contact prior to the issuance of the renewal policy or the aircraft accident was when S.A. Guinea copied Plaintiff on an email. *Id.* at ¶ 8; Dkt. 40 at 11. Airborne never solicited a client from Florida. Supp. Ray Aff. ¶ 4. Rather, S.A. Guinea solicited Airborne. *Id.* Moreover, Airborne's limited contact with Plaintiff following the aircraft accident—for which Airborne received no pecuniary or other benefit—does not constitute "conducting business."

Airborne also did not engage in a "business venture" in Florida because Airborne never sent a representative to Florida to advertise or otherwise solicit Plaintiff as a client; never communicated with Plaintiff regarding the procurement of the insurance; did not have

"extensive" business correspondence with Plaintiff; and did not have a long-standing business relationship with Plaintiff. *Compare Naviera Mayaca Exp. S. de R.L. v. Brauer & Assocs., Inc.*, 559 So. 2d 1230, 1230–31 (Fla. 3d DCA 1990) (per curiam) (finding personal jurisdiction over insurance broker with a "long-standing business relationship" with Florida resident, who had "extensive" business correspondence with Plaintiff in Florida in connection with the procurement of the insurance and the servicing of the account, including *sending a representative* to Florida) *with Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc.*, 726 So. 2d 313, 314 (Fla. 3d DCA 1998) (finding defendant did not engage in a business venture despite receiving over $198,000 from a Florida resident and distinguishing *Naviera*, stating "this was not a case where Karl had a 'longstanding business relationship' with Travel over a period of years; nor did Karl send extensive business correspondence and a representative to Florida to procure and service the account").

Thus, the sum of Airborne's alleged activities do not constitute a general course of business activity in Florida for pecuniary benefit. *See, e.g., Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 296 (S.D. Fla. 1997); *Cauff Lippman & Co. v. Apogee Fin. Grp., Inc.*, 745 F. Supp. 678, 682 (S.D. Fla. 1990) (one meeting in Florida at the plaintiffs' request and negotiations and other communications by letter, telex and telephone from out of state were insufficient); *Jasper v. Zara*, 595 So. 2d 1075 (Fla. 2d DCA 1992) (finding no business venture so no personal jurisdiction in Florida in client's action against New York financial planners where plaintiff initially solicited defendant in New York by phone and defendant subsequently communicated with plaintiff by telephone and letter over a period of 18 months and had never solicited business or advertising in Florida nor maintained office, agent, address, or telephone listing in Florida,).

**B.      The Court does not have jurisdiction over Airborne under § 48.193(1)(a)(2.)**

Pursuant to Fla. Stat. § 48.193(1)(a)(2.), Florida courts can exercise jurisdiction over a foreign defendant for "[c]ommitting a tortious act within this state." The occurrence of an injury within the state is insufficient. Rather, the plaintiff must establish "the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990) (internal quotations and alterations omitted). In addition, while out-of-state communications can sometimes trigger Florida's long-arm statute, "'the cause of action must arise from the communications.'" *Estate of Scutieri v. Chambers*, 386 F. App'x 951, 955 (11th Cir. 2010) (per curiam) (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). This "connexity requirement" for torts committed out of state "requires courts to ask first whether the complaint states a cause of action, and if so, whether the cause of action arises from the out-of-state communications into Florida." *Id.* at 954.

### 1. No Specific Jurisdiction Over the Negligence Claim

For the negligence claim, Plaintiff has failed to allege that Airborne's alleged tortious acts took place in Florida or that the tort arose from Airborne's communications into Florida. Plaintiff alleges that Airborne was negligent in furnishing a policy of insurance from an insurer not authorized to insure a loss in Florida and completing the policy paperwork. Am. Compl. ¶ 41. At the latest, then, the Airborne's tortious acts were complete when (1) Airborne issued the Renewal Quotation; (2) Airborne completed the policy paperwork; or (3) Guardrisk issued the Renewal Policy. *See Alexander & Alexander of the Carolinas, Inc. v. Nw. Oxygen, Inc.*, 541 So. 2d 1238, 1239 (Fla. 2d DCA 1989) (holding if a tort was committed by the insurance agency in procuring a policy, it was "committed" at the time the policy was obtained).

The allegations of the Complaint, the attached Exhibits, and the Affidavit of Ray,

however, show that Airborne's only communications "directed" to Florida occurred after the alleged tort occurred. *See* Am. Compl. Ex. D; Ray Aff. ¶ 18–19 (testifying Airborne's only communications with Plaintiff occurred after Guardrisk issued the Renewal Policy and after the Aircraft crashed). Since Airborne's only contact with Florida occurred after the completion of the alleged negligence tort and were not necessary for the alleged tort, Plaintiff cannot establish that the communications were "essential" to the success of the tort. *See Estate of Scutieri*, 386 F. App'x at 955 (holding that letters sent to plaintiff in Florida did not "give rise to the cause of action" because the fraudulent scheme had *already been established elsewhere*, and thus "the letters are insufficient to establish jurisdiction" under the tortious activity clause). Accordingly, there is no jurisdiction over the negligence claim. *See Wendt*, 822 So. 2d at 1260.

### 2. No Specific Jurisdiction Over the Breach of Fiduciary Duty Claim

Plaintiff claims that after the crash, Airborne (1) counseled and advised Plaintiff; (2) served as an intermediary between Plaintiff and Guardrisk; and (3) halted efforts to secure coverage and referred Aviation One to co-defendant Clyde & Co. *See* Am. Compl. ¶¶ 32–34. Plaintiff claims Airborne breached its fiduciary duty by:

a)      failing to fully inform Aviation One of all the material facts within Airborne's knowledge affecting the insurance policy, including but not limited to the fact that the Guardrisk policy was the only policy available;

b)      failing to exercise reasonable skill and diligence in obtaining and maintaining insurance for Aviation One;

c)      failing to obtain coverage as required by the Lease and as explicitly requested, including the breach of warranty endorsement that afforded Aviation One additional rights and benefits;

d)      failing to inform Aviation One of its lack of coverage under the policy it procured;

e)      assuming representation of Aviation One in pursuing coverage for its loss with the knowledge Airborne was at fault for negligence in its maintenance and renewal of the policy and in failing to secure the breach of warranty endorsement;

f)      failing to inform Aviation One of all material facts that could affect

Aviation One's ability to obtain coverage, including Airborne's conflicting interests with Aviation One;

g)     hiring Airborne's legal counsel, Clyde & Co., and directing Aviation One to consult with and retain the firm, knowing Alex Stovold was also representing Airborne's interests; and,

h)     referring Aviation One to attorneys at Clyde & Co. even after Airborne halted pursuit of coverage from Guardrisk.

Am. Compl. ¶ 61. Plaintiff has not alleged that Airborne made affirmative misrepresentations in communications directed to Florida.

First, any tortious conduct, which there is none, occurred in South Africa, not Florida. The crux of Plaintiff's claim is that Airborne "failed" to take various actions. Acts in failing to inform; failing to exercise reasonable skill and diligence; failing to obtain coverage; assuming representation of Plaintiff; and hiring Airborne's legal counsel all occurred in South Africa where Airborne's decision-makers are located. *Compare Florida Gamco, Inc. v. Fontaine*, 68 So. 3d 923, 929 (Fla. 4th DCA 2011) (in the related context of proper venue, holding breach of fiduciary duty claim accrued in county in which corporation had its sole office and in which all decisions relating to corporation were made). Airborne's alleged inaction occurred in South Africa, and Airborne's alleged "hiring" of Plaintiff's counsel occurred in South Africa.

Airborne anticipates Plaintiff will argue that Airborne's communications to Florida establish jurisdiction in Florida. It is important to note, however, that most of the alleged "tortious conduct" did not involve a communication at all, yet alone communications directed to Florida. In addition, under Florida law it is likely that communications sent to Florida can provide the basis for personal jurisdiction only if the communication *itself* constitutes the tortious act—such as claims for defamation, slander, or and the unlawful recording of telephone calls. *See Koock v. Sugar & Felsenthal LLP*, No. 8:09-CV-609-T-17EAJ, 2010 WL 1223794, at *4 (M.D. Fla. 2010) (citing *Wendt*, 822 So. 2d 1252). In *Koock*, the Court explained:

14

> The Florida Supreme Court identified the torts of defamation, slander, or wrongful recording of communications as torts which meet the 'connexity' requirement of Sec. 48.193(1)(b)—the causal connection between the defendant's activities in Florida and the plaintiff's cause of action. In other words, the communication itself must be the tortious act for the tort to 'arise from' the communication.

*Id.*; *see also Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So. 2d 1013, 1017 (Fla. 4th DCA 2003) (dismissing action for lack of personal jurisdiction and noting that in prior Florida cases, "a nonresident defendant was alleged to have made telephonic or written communications into Florida which were in and of themselves tortious; *viz:,* the communications were either defamatory statements or negligent legal advice to a client"). Thus, in *Koock* the court held that a breach of a duty to make full and fair disclosures did not occur in Florida, despite the fact that the defendant sent communications into Florida. *Koock*, 2010 WL 1223794, at \*4–5.

In this case, Airborne did not do or fail to do anything in Florida. Plaintiff has not alleged that Airborne's limited communications into Florida were themselves the tortious act. Nor could it—the majority of the electronic communications following the crash were between Airborne and S.A. Guinea. *See generally* Am. Compl. Ex. D (demonstrating that Airborne mainly communicated with S.A. Guinea, who would then copy or forward the email to Plaintiff). Attached to the Amended Complaint are only nine emails in which Airborne communicated directly with Plaintiff. These emails are all benign and do not constitute tortious conduct. *See* Am. Compl. Ex. D. at 109 (October 6 email stating that Airborne had been notified that the assessor submitted his report to underwriters); 110 (October 22 email forwarding correspondence regarding Guardrisk's repudiation of the claim and S.A. Guinea's signed acceptance of the insurance terms and conditions); 88 (October 26 email wherein Airborne stated it would like to argue to Guardrisk that Plaintiff was not aware that S.A. Guinea breached the Lease); 88 (November 9 email inquiring if Plaintiff received the October 26 email); 86 (November 20 email

notifying Plaintiff that Guardrisk requested the bank's lien contract); 126 (January 5 email regarding re-sending the policy); 129 (January 26 email that Airborne's director was meeting Guardrisk the following day to discuss the various issues); 132 (random page of text which explains the potential theory of recovery from the insurer); 133 (February 9 email that Airborne was sorry to miss Plaintiff's call and has forwarded Plaintiff's letter to Guardrisk).

Florida courts have gone so far as to hold that merely sending documents—even negligently prepared documents—into Florida is insufficient to constitute the commission of a tortious act in Florida. *Harris v. Shuttleworth & Ingersoll, P.C.*, 831 So. 2d 706, 708 (Fla. 4th DCA 2002) (finding Iowa attorney that negligently prepared checks in Iowa and mailed them to Florida that incorrectly distributed the proceeds from the sale of trust assets and caused injury to a Florida resident did not constitute the commission of a tortious act in Florida). Moreover, to the extent Airborne sent communications into Florida, Plaintiff fails to allege or show that any of these acts involved communications that were "essential" to the success of the tort, which is necessary for jurisdiction. *See Cable/Home Commc'n Corp.*, 902 F.2d at 857. Accordingly, the "tort" prong of the Long-Arm Statute is not satisfied. In this case, there is no Airborne communication to Florida that is alleged to constitute tortious conduct in and of itself. To the contrary, the alleged tortious conduct is a failure to do something. That conduct does not arise out of any communication to Florida. Rather, the alleged cause of action arose, if at all, only from Airborne's alleged failures and omissions in South Africa. Accordingly, there is no personal jurisdiction.

**C.**      **Airborne did not contract to insure a risk in Florida, Fla. Stat. § 48.193(a)(1)(4.)**

Pursuant to § 48.193(1)(a)(4.), an entity can be subject to Florida's personal jurisdiction for "[c]ontracting to insure a person, property, or risk located within this state at the time of

contracting." Plaintiff attempts to fit Airborne in this provision by alleging repeatedly that Airborne "bound, issued, and delivered" the insurance policy to insure "an aircraft that was in Florida at the time coverage was issued." *See generally* Compl. ¶¶ 6, 7, 8, 14, 18, 19. What Plaintiff ignores is that (1) insurance brokers like Airborne do not "contract to insure" as is defined within the statute and (2) the aircraft was in West Africa—not Florida—at the time Airborne procured, and Guardrisk issued, the Renewal Policy.

First, § 48.193(1)(a)(4.) does not allow for jurisdiction over an agent or broker who has procured an insurance contract. *Alexander & Alexander of the Carolinas, Inc.*, 541 So. 2d at 1239 (holding the long arm statute does not apply to insurance agencies who bring clients together with insurance companies since the insurance agencies do not insure risks within the meaning of the statute); 5 Fla. Prac., Civil Practice § 8:7 (2014 ed.). Airborne is not an insurance company. Airborne does not issue or underwrite insurance policies or insure risks at all. Supp. Ray Aff. ¶ 10 (explaining Airborne does not insure risks because it is an insurance broker, and it never contracted to insure a property or risk located in Florida). It is the insurance company— Guardrisk—that "contracts to insure." While Plaintiff claims Airborne "issued" the Policy, these allegations are made without supporting fact and are refuted by the allegations of the Complaint and attached Exhibits which plainly show that Guardrisk issued the Policy and Renewal Policy. *See* Am. Compl. Ex. B & C.

Second, at the time of the Renewal Policy there was no "person, property, or risk" located in Florida. Plaintiff asserts jurisdiction is proper because the Aircraft was in Florida at the time Guardrisk issued the coverage. Am. Compl. ¶ 6. What Plaintiff tries to gloss over, however, is that it is suing Airborne for negligence in procuring the *Renewal* Policy. "The general rule in Florida is that upon each renewal of an insurance policy an entirely new and independent

contract of insurance is created." *Marchesano v. Nationwide Prop. & Cas. Ins. Co.*, 506 So. 2d 410, 413 (Fla. 1987).

It is plain from the Amended Complaint's Exhibits and the Affidavit of Ray that "at the time of contracting" the Renewal Policy, the Aircraft was located in West Africa. *See* Am. Compl. Ex. B, at 23 (stating the aircraft is "Based" in "Guinea West Africa"); Ray Aff. ¶ 23 ("The aircraft was located in Guinea, West Africa, at both (1) the time when Airborne communicated with S.A. Guinea regarding procuring the renewal policy and (2) the time when the insurer issued the renewal policy."). In addition, the Renewal Policy did not provide coverage for the Aircraft while it was based in Florida. In both the Renewal Quotation and the Renewal Policy, the "geographical limits" of the coverage is limited to "[t]he Continent of Africa." *See* Am. Compl. Ex. B, at 23, 25, 35; Am. Compl. Ex. C, at 46. Accordingly, since at the time the renewal "contract" was entered into "there was no person, property or risk located within the State of Florida," there is no jurisdiction under this section.

**D.     Airborne Did Not Breach a Contract in Florida, Fla. Stat. § 48.193(a)(1)(7)**

Section 48.193(a)(1)(7) only permits personal jurisdiction if the defendant "breached a contract" in Florida "by failing to perform acts required by the contract to be performed in" Florida. This means "that there must exist a duty to perform an act *in Florida;* a contractual duty to tender performance to a Florida resident" is insufficient. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999). It is not enough that a defendant merely contract with a Florida resident, rather, "the contract itself must require performance in Florida." *Travel Opportunities*, 726 So. 2d at 314.

Plaintiff has not pled a claim for breach of contract nor has it alleged the existence of a contractual agreement between the parties. Under the plain language of the statute, a claim for

18

common-law indemnity cannot be construed as a claim for "breaching a contract in Florida." Nor did Plaintiff base its common-law indemnity claim on any contract. Even assuming there were a contract between Airborne and Plaintiff, such contract would have been "breached" in South Africa when Airborne allegedly failed to procure the requested coverage. Any claim that breach of the insurance policy provides jurisdiction over Airborne is incorrect, as it is impossible for Airborne, a non-party to the policy, to have breached it. Thus, § 48.193(a)(1)(7) does not apply.[5]

## II.   AIRBORNE DID NOT HAVE MINIMUM CONTACTS WITH FLORIDA SO MAINTAINING JURISDICTION OVER AIRBORNE DOES NOT COMPORT WITH THE DUE PROCESS REQUIREMENTS OF THE 14TH AMENDMENT[6]

The Due Process Clause prohibits Florida courts from exercising jurisdiction over Airborne. Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires that the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Determining minimum contacts requires evaluation of the "quality and nature" of the non-resident's activity. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). To constitute minimum contacts for purposes of personal jurisdiction, the defendant's contacts with the applicable forum must: (1) be related to the plaintiff's cause of action or have given rise to it;

---

[5] *Cronin v. Washington National Insurance Co.*, 980 F.2d 663 (11th Cir. 1993) is inapplicable. The facts of *Cronin* are very different (i.e., the broker agreed to procure Florida health insurance for an individual in Florida) and *Cronin* applied the "breaching a contract in the state" subsection, not the "contracting to insure a risk in Florida" subsection. *Id.* at 670–71; 670 n.9. Here, Plaintiff has not brought a claim for breach of contract. More importantly, in *Cronin* the court said personal jurisdiction over the negligence claim for failure to procure coverage was doubtful without the breach of contract claim. *Id.* at 671 (long-arm statute provided "personal jurisdiction over the contract claim but arguably not the negligence claims").

[6] As Plaintiff's own documents show, this is not an issue for United States courts. *See* Response, Dkt. 39, Original Ex. 3 ("[W]e understand the situation with London underwriters not wanting U.S. liability issues, **but this is simply not the case**. This aircraft will be operated in Africa." (emphasis added)). Plaintiff tried to remove this exhibit after originally filing it, so a copy of it is attached hereto as Exhibit "5".

(2) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefit and protection of its laws; and (3) be such that the defendant should reasonably anticipate being haled into court there. *See Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993).

Applying these standards to the facts of this case, Airborne does not have sufficient minimum contacts with the state of Florida. First, under the second inquiry, Airborne did not purposefully avail itself of the privilege of conducting activities in Florida. It was S.A. Guinea, not Plaintiff, who paid the policy premiums. Thus, any revenue Airborne received from the commission was not paid with Florida dollars. Moreover, Airborne communicated mainly with S.A. Guinea, which was located in Georgia and West Africa. The policies were meant to cover the Aircraft's operations in Africa. Airborne has no office, employees, or property of any kind in Florida. It does not conduct business in Florida, and its only connection to Florida is that one of two named insureds on the policy is a Florida citizen. Airborne is not registered as a foreign corporation or foreign insurer qualified to transact business in Florida; has not transacted business in Florida; has never had any directors, officers, employees, or agents in Florida; and has not maintained any offices in Florida. In sum, Airborne's very limited electronic communications with Plaintiff following the Aircraft crash cannot mean that Airborne invoked the benefit and protection of Florida's laws.

In addition, Airborne's limited contacts with Plaintiff did not rise to the level of "minimum contacts" or otherwise give Airborne "fair warning" that its activities would subject it to Florida jurisdiction. For example, in *Thomas v. Brown*, the Eleventh Circuit held that a law firm that represented a Florida corporation did not have sufficient minimum contacts with Florida based on only telephone and electronic communications with its Florida-based client.

*Thomas v. Brown*, 504 F. App'x 845, 848 (11th Cir. 2013). The court noted that the defendants had no office or property of any kind in Florida, and, like Airborne, did not market themselves to Florida. *Id.* Instead, the "only contacts" the defendants had with Florida were "telephone and electronic communications" made with the Florida-resident Plaintiffs, who were the defendant's client. *Id.* In addition, the defendants had never traveled to Florida for anything connected with the matter. *Id.* Based on this evidence, the court held the defendants did not purposefully avail themselves of conducting business in Florida. *Id.* Importantly, the court noted that the defendant did not solicit any work from their Florida-based client, and were originally contacted to represent the Florida client by entities that were located outside of Florida. *Id.* In addition, the defendant never mailed bills to Florida. *Id.* The court reasoned:   "[t]he fact that [plaintiff] is a Florida corporation and that Defendants spoke on the phone with [plaintiff's] shareholders in Florida does not establish that Defendants would have 'fair warning' that their activities related to this matter would subject them to the jurisdiction of Florida." *Id.* at 849. Accordingly, the court held that the defendants did not have sufficient minimum contacts with Florida.

Likewise, any contacts Airborne had with Florida would not make Airborne anticipate being haled into Florida courts. In addition to the fact that Airborne's primary contact was a Georgia LLC that was operating a charter service out of West Africa, both the Policy and Renewal Policy Guardrisk issued to Plaintiff has a forum selection and choice of law provision which states that the Policy is governed by the law of the Republic of South Africa, which "shall have" jurisdiction in any dispute under the Policy. Compl. Ex. C at 69, Dkt. 1-3. This provision indicates the intent of the parties to submit to any future litigation in the courts of the Republic of South Africa, not Florida, and weighs against a finding that Airborne could anticipate being haled into Florida courts. *Am. Express Ins. Servs. Europe Ltd. v. Duvall*, 972 So. 2d 1035, 1038–

39 (Fla. 3d DCA 2008) (holding an insurance agency had no minimum contacts with Florida, based, in part, because "[a] company like [defendant] that services customers within the United Kingdom acting as an insurance agent for policies that specifically provide that they are subject to 'the laws of England and Wales' cannot reasonably anticipate being haled into court" in Florida). Under these facts, it is clear that Airborne has not purposefully availed itself of the privilege of conducting business in Florida, could not anticipate being haled to court there, and thus minimum contacts do not exist. *See, e.g.*, *Alexander & Alexander of the Carolinas, Inc. v. Nw. Oxygen, Inc.*, 541 So. 2d 1238, 1239 (Fla. 2d DCA 1989).[7]

Finally, even if Plaintiff could establish "minimum contacts" with Florida, subjecting Airborne to personal jurisdiction would not comport with "fair play and substantial justice." This

---

[7]Plaintiff may try to rely on an Alabama fraud case involving a marine insurance contract to argue that jurisdiction over Airborne does not violate the due process clause. *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355–56 (11th Cir. 2000) (applying the Alabama long-arm statute). But the facts in *Ruiz de Molina* are distinguishable and therefore that Court's finding of jurisdiction is simply not relevant and persuasive in this case. In *Ruiz*, the court based its holding, on, *inter alia* (1) the stream-of-commerce test; (2) the allegations of the *intentional* torts of fraud and fraudulent deceit; and (3) the fact that the policy was going to be "purchased by and delivered to an Alabama resident for a boat anchored in Alabama which would [] move in Alabama waters." *Id.* at 1357–58. Here, the facts are very different. First, the policy was purchased by a Georgia citizen located in West Africa, the policy was not delivered in Florida, and the Renewal Policy covered the aircraft's operations in West Africa, not Florida. Second, unlike in Alabama, Florida's "stream of commerce" test is restrictive and applies only to "products, materials, or other things processed"—not insurance policies. Fla. Stat. § 48.193(1)(a)(6). Moreover, in Florida this test requires actual personal injury or damage to physical property in Florida caused by the defendant's conduct, which is not present in this case. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 629 (11th Cir. 1996). Finally, the *Ruiz* court placed significant emphasis on the fact that the defendants were charged with fraud and not mere negligence, and thus applied the *Calder* effects test. *Id.* at 1385 (noting the defendants were "not charged with mere negligence"). This is significant because the *Calder* test applies only to cases involving intentional torts, not negligence. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1224 (11th Cir. 2009) (noting that minimum contacts test is applicable to torts of negligence while *Calder* effects test is applicable to intentional torts); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 8:12-CV-755-T-26TBM, 2012 WL 2952452, at *4 (M.D. Fla. July 19, 2012). In this case, Plaintiff has not alleged fraud against Airborne so the *Calder* test as applied in *Ruiz* is inapplicable. In addition, Airborne did not anticipate being haled into Florida's courts, Supp. Ray Aff. ¶ 13, and in this case, unlike in *Molina*, the policy was not purchased by a forum resident.

inquiry is a balancing test, which considers the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental, substantive social policies. *Meier v. Sun Int'l Hotels*, 288 F.3d 1264, 1276 (11th Cir. 2002). In this case, a balancing of the relevant factors demonstrates that asserting personal jurisdiction over Airborne in Florida would be inappropriate because (1) the burden on Airborne to litigate Plaintiffs' claims in Florida would be great; (2) the acts complained of occurred in South Africa; and (3) it would not be convenient, efficient, or effective to address Plaintiffs' claims against Airborne in Florida. For these reasons, it would be entirely unreasonable, a violation of Due Process, and would offend traditional notions of fair play and substantial justice for this Court to exercise jurisdiction over Airborne.

## CONCLUSION

For the aforementioned reasons, Airborne requests that it be dismissed with prejudice.

/s/ John P. O'Flanagan
John P. O'Flanagan
Florida Bar No.: 0072885
Erica T. Healey
Florida Bar No: 0086586
BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Boulevard, Suite 1500
Tampa, FL 33602
Telephone No: (813) 221-1500
Fax No:        (813) 222-3066
Email: bbourgeois@bankerlopez.com
        joflanagan@bankerlopez.com
        ehealey@bankerlopez.com
Attorneys for DEFENDANT AIRBORNE INSURANCE
CONSULTANTS, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) to Rosemary Hayes, Esq., Attorney for Plaintiff; Scott E. Damon, Esq., attorney for Defendant Clyde & Co. LLP. In addition, a true and accurate copy of the above and foregoing has been furnished by U.S. Mail to Mohamed Diaoune, 1955 Henderson Way, Lawrenceville, GA 30043, *self-represented.*


/s/ John P. O'Flanagan
John P. O'Flanagan
Florida Bar No.: 0072885
Erica T. Healey
Florida Bar No: 0086586
BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Boulevard, Suite 1500
Tampa, FL  33602
Telephone No: (813) 221-1500
Fax No:      (813) 222-3066
Email: bbourgeois@bankerlopez.com
       joflanagan@bankerlopez.com
       ehealey@bankerlopez.com
Attorneys for DEFENDANT AIRBORNE INSURANCE
CONSULTANTS, LTD.