UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**AVIATION ONE OF FLORIDA, INC.,**

        **Plaintiff,**

**v.**                                        **Case No:  6:13-cv-1243-Orl-41DAB**

**AIRBORNE INSURANCE
CONSULTANTS (PTY), LTD, AFRICA
TOURS AND TRAVEL, LLC,
MOHAMED DIAOUNE and CLYDE &
CO., LLP,**

        **Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on Defendant Airborne Insurance Consultants (PTY), LTD's ("Airborne") Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (Doc. 86); Defendant Clyde and Co., LLP's ("Clyde") Motion to Dismiss for Lack of Personal Jurisdiction, and Motion to Quash Improper Service of Process or, Alternately, Motion to Dismiss for Improper Venue (Doc. 75); and Plaintiff's Motion to Modify Case Management & Scheduling Order, Extend Deadlines and to Proceed with Discovery (Doc. 80). As set forth herein, Airborne's and Clyde's jurisdictional motions will be granted, and all claims against Airborne and Clyde will be dismissed for want of personal jurisdiction. Plaintiff's Case Management Motion will be granted in part.

# I.   BACKGROUND

Plaintiff filed its original Complaint (Doc. 1) against Airborne, Africa Tours and Travel, LLC d/b/a S.A. Guinee[1] ("S.A. Guinee"), and Mohamed Diaoune, alleging negligence, common law indemnity, breach of guarantee, and breach of contract claims. Plaintiff then filed an Amended Complaint (Doc. 67), adding a claim for breach of fiduciary duty against Airborne, adding Clyde as a defendant, and asserting a claim for professional negligence against Clyde.

Plaintiff's claims are all tied to the crash of Plaintiff's Beech model 1900C aircraft (the "Aircraft"), in Guinea, West Africa. (Am. Compl. ¶¶ 8, 27, 30, 34). At the time of the crash, the Aircraft was leased by S.A. Guinee, a Georgia limited liability company. (*Id.* ¶¶ 4, 12–13). The lease agreement required S.A. Guinee to procure and maintain insurance on the Aircraft and set forth the nature of the coverage required. (*Id.* ¶¶ 14–15). S.A. Guinee engaged Airborne, an insurance broker located in South Africa, to procure the necessary insurance on S.A. Guinee's behalf. (*Id.* ¶¶ 2, 14). Airborne procured insurance from Guardrisk Insurance Company, Ltd. ("Guardrisk"), also located in South Africa. (*Id.* ¶ 19 & n.1). The policy named both S.A. Guinee and Plaintiff as the "Insured." (*Id.*).

After the crash, Guardrisk denied Plaintiff's claim for several reasons, including the fact that the individual piloting the Aircraft was not listed as an approved pilot on the insurance policy. (*Id.* ¶ 30 & n.2). Plaintiff also discovered that the policy did not contain the Breach of Warranty endorsement for the full hull value. (*Id.* ¶ 31). Throughout the claims process, Airborne served as Plaintiff's representative in negotiations with Guardrisk. (*Id.* ¶¶ 32–33). At some point after the denial, Airborne referred Plaintiff to its legal counsel, Clyde, which is located in the United

---

[1] Although the case style indicates that the company's name is "S.A. Guinea," Plaintiff refers to the company as "S.A. Guinee," which appears to be accurate from the company's email account. (*See e.g.*, Ex. 5 to Mar. 17, 2014 Udey Aff., Doc. 87-1, at 29).

Kingdom. (*Id.* ¶ 34). According to Plaintiff, Clyde failed to disclose a conflict of interest created by representing both Airborne and Plaintiff. (*Id.* ¶¶ 35–36). Airborne and Clyde now each move for dismissal of the claims against them for lack of personal jurisdiction.

## II.    LEGAL STANDARD

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."[2] *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden . . . shifts back to the plaintiff to produce evidence supporting jurisdiction" unless "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quotations omitted).

As a federal court sitting in diversity, this Court must "undertake[] a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs.*, 556 F.3d at 1274. Here, Plaintiff has failed to establish jurisdiction under the Due Process Clause as to either Airborne or Clyde, rendering an analysis under Florida's long-arm statute unnecessary.

"[D]ue process requires . . . that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it

---

[2] Plaintiff makes argues that this Court may have general jurisdiction over Clyde because Clyde is affiliated with a U.S. law firm. However, Plaintiff misconstrues the Affidavit submitted by Clyde, which states that its U.S. counterpart is not a subsidiary of, or owned by, Clyde. (Langley Aff., Doc. 75-1, ¶ 14). Moreover, the U.S.-based firm does not have an office in Florida. (*Id.*).

such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "In a case involving specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria:" (1) "they 'must be related to the plaintiff's cause of action or have given rise to it;'" (2) "they must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum'; and" (3) "they 'must be such that the defendant should reasonably anticipate being haled into court there.'" *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (quoting *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005)).

### III.   MOTION TO DISMISS BY AIRBORNE

Plaintiff's claims against Airborne involve two separate events: the procurement of the insurance policy and the representation of Plaintiff in post-crash negotiations. Plaintiff must establish a separate basis for personal jurisdiction as to each claim. *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 788 (11th Cir. 2014) ("[P]ersonal jurisdiction over one individual claim cannot be expanded to cover other related claims unless the claims 'arose from the same jurisdiction generating event.'" (quoting *Cronin v. Wash. Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993)).

### A.   Minimum Contacts—Negligent Procurement

Regarding the procurement and issuance of the insurance policy, Airborne had no direct contact with Plaintiff or Florida. Airborne does not maintain any place of business or office locations in Florida, is not registered as a corporation in Florida, has no employees or agents in Florida, does not generate any revenue in Florida, pays no taxes in Florida, owns no property in Florida, and does not engage in any advertising or solicitation directed to Florida. (Feb. 13, 2014

Ray Aff. ("Feb. Ray Aff."), Doc. 86-2, ¶¶ 5–15). Airborne was retained by S.A. Guinee, a Georgia company, to procure the insurance policy, and Airborne communicated only with S.A. Guinee during the procurement and renewal process. (*Id.* ¶¶ 16–17; Apr. 8, 2014 Ray Aff. ("Apr. Ray Aff."), Doc. 86-3, ¶ 4). Although Plaintiff attempts to transmute the facts with the conclusory statement that "prior to the initial issuance of the Policy through the claims process, Airborne Insurance communicated with [Plaintiff] in Florida by telephone, email, and U.S. mail," (Mar. 17, 2014 Udey Aff. ("Mar. Udey Aff."), Doc. 87-1, ¶ 8), Plaintiff fails to identify a single communication between Plaintiff and Airborne prior to the crash. Instead, Plaintiff relies on emails forwarded to Plaintiff by S.A. Guinee, (Exs. 3, 7 to Mar. Udey Aff.), and emails from S.A. Guinee to Airborne on which S.A. Guinee copied Plaintiff, (Ex. 2 to Mar. Udey Aff.). Airborne's evidence is consistent with Plaintiff's supporting documentation; "[t]he only instance in which Airborne and [Plaintiff] had any contact prior to the issuance of the policy or the aviation accident was when [Plaintiff] was copied on one or two emails between Airborne and S.A. Guine[e]. Airborne was not the entity that included [Plaintiff] as a 'cc' on these emails." (Apr. Ray Aff. ¶ 8).

Plaintiff also cleverly phrases statements to obscure the identity of who actually made these communications. For example, Plaintiff stated that it "was furnished a copy of the proposed policy," which was marked up to answer the "lessor's questions." (Mar. Udey Aff. ¶ 5). The insinuation posited by Plaintiff—that the policy was furnished to Plaintiff by Airborne—is rebutted by Plaintiff's own evidence; S.A. Guinee provided these documents to Plaintiff, and the documents were marked up to answer questions actually raised by S.A. Guinee. (Ex. 3 to Mar. Udey Aff.; *see also* Apr. Ray Aff. ¶ 7). The mere fact that S.A. Guinee may have asked Airborne questions that arose from a conversation between S.A. Guinee and Plaintiff does not transform

S.A. Guinee's inquiries into a communication between Plaintiff and Airborne. Accordingly, Airborne had no direct contact with Florida or Plaintiff prior to the crash.

In some circumstances, however, "[d]irect contact by a nonresident defendant with the forum is not required." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1357 (11th Cir. 2000). Plaintiff has advanced two theories for exercising personal jurisdiction over Airborne despite Airborne's lack of direct contact with the forum during the procurement of the insurance policy: the "stream of commerce" theory and the "effects" test.

Under the "stream of commerce" theory, a district court may assert "personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State," *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980), "so long as the nonresidents's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there for claims arising out of that conduct," *Ruiz de Molina*, 207 F.3d at 1357. This theory does not support an exercise of jurisdiction over Airborne.[3]

"[T]he stream-of-commerce metaphor cannot supersede either the mandate of the Due Process Clause or the limits on judicial authority that Clause ensures." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2791 (2011). Indeed, the United States Supreme Court "has strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting

---

[3] As an initial matter, it is unclear whether the "stream of commerce" theory is applicable here. The theory is focused on injury caused by a product, *see, e.g.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2786 (2011) (applying stream of commerce theory to injury caused by metal shearing machine); *Asahi Metal Indus. Co. v. Superior Court of Calif., Solano Cnty.*, 480 U.S. 102, 105–06 (1987) (motorcycle tire); *Worldwide Volkswagen*, 444 U.S. at 287–88 (automobile), and the damages alleged by Plaintiff did not stem from the "product" placed into the stream of commerce—the insurance policy—but rather from acts and omissions allegedly committed by Airborne.

jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place." *Id.* at 2792 (Breyer, J., concurring in judgment).[4] Plaintiff's negligent procurement claim involves, at best, such a situation.

The case cited by Plaintiff, *Ruiz de Molina*, is inapposite. In that case, a Michigan insurance broker procured a policy on behalf of an Alabama resident to cover a boat while it was located in Alabama, but the insurance broker had no direct contact with the Alabama resident. 207 F.3d at 1354–55. In determining that personal jurisdiction existed over the insurance broker, the *Ruiz de Molina* Court found it significant that the broker knew "full well that [the policy] was to be purchased by and delivered to an Alabama resident for a boat anchored in Alabama which would, of necessity, move in Alabama waters." *Id.* at 1357–58. To the contrary, in this case S.A. Guinee reached out from Georgia to Airborne in South Africa and purchased the insurance policy. (Apr. Ray Aff. ¶ 4). The policy and invoices were delivered to S.A. Guinee, (*id.* ¶ 5), and the policy insured an aircraft located in West Africa, specifically limiting the insurance coverage to the continent of Africa. (Certificate of Insurance, Ex. 6 to Mar. Udey Aff., at 1). Unlike the situation in *Ruiz de Molina*, neither the entity purchasing the insurance nor the property to be insured were located in the forum.[5] Based on these facts, Airborne could not have reasonably anticipated being haled into court in Florida.

---

[4] "*J. McIntyre* was a fragmented decision and no opinion enjoyed the assent of five Justices. Therefore, courts have considered Justice Breyer's concurring opinion as the holding because he concurred in the judgment on only the narrowest of grounds." *Hatton v. Chrysler Can., Inc.*, 937 F. Supp. 2d 1356, 1366 (M.D. Fla. 2013); *see also Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (quotation omitted)).

[5] Plaintiff makes much of the fact that the Aircraft was, at one time, located in Florida. However, the entirety of Airborne and S.A. Guinee's business dealings contemplated that the

Moreover, the *Ruiz de Molina* court did not rely exclusively on the stream of commerce theory. Seemingly more important to the *Ruiz de Molina* decision was its analysis under the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984). *Ruiz de Molina*, 207 F.3d at 1358. The effects test is based on the premise that a defendant purposefully avails himself of a forum's laws when he intentionally and tortiously commits actions that are expressly aimed at that forum; that such intentional tortious activities provide a defendant with fair notice that injury will occur in the forum; and that, therefore, the defendant should reasonably anticipate being haled into court in the forum. *Calder*, 465 U.S. 789–90. Accordingly, minimum contacts may be established under the effects test where the alleged tort "was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008). Despite Plaintiff's arguments to the contrary, the "effects" test does not apply here.

Plaintiff's claims stemming from the procurement of the policy do not assert a claim for an intentional tort. Therefore, the claims fail the first prong of the effects test and the rationale behind the test is inapplicable. *Louis Vuitton*, 736 F.3d at 1356–57 & n.11 (noting that the effects test applies only in intentional tort cases). Plaintiff evades this issue in his Response, focusing on the fact that he has alleged that Airborne's procurement actions breached its fiduciary duty to Plaintiff and arguing that "[t]he intentional tort of breach of fiduciary duty is a 'classic example' of such acts that satisfy the effects test." (Resp. to Airborne's Mot. to Dismiss, Doc. 87, at 18). While

---

Aircraft would be located and operated in Africa. Plaintiff indicates that there may have been a separate policy or provision insuring the Aircraft during its transport from the United States to Africa. However, none of the allegations of this case arise from that policy or any damage that occurred during the transport. *See Louis Vuitton*, 736 F.3d at 1356–58 (noting that relatedness between the defendant's contact with the forum and the plaintiff's claim is "[a] fundamental element of the specific jurisdiction calculus." (quotation omitted)).

Plaintiff's general proposition is correct, it is irrelevant. Plaintiff does not state a claim for intentional breach of fiduciary duty. Instead, Plaintiff alleges *negligent* breach of fiduciary duty. *See Horizons Rehab., Inc. v. Health Care & Ret. Corp.*, 810 So. 2d 958, 964 (Fla. 5th DCA 2002) (noting that a breach of fiduciary duty claim may be "either a negligent or an intentional tort"). Plaintiff's Amended Complaint makes no mention of intentional or fraudulent behavior. To the contrary, Plaintiff alleges that it has been damaged "[a]s a result of Airborne's *negligence*" and "as a direct consequence of Airborne's *negligence*." (Am. Compl. ¶¶ 62–63 (emphasis added)). In addition, all of the factual allegations detailing Airborne's purported breach sound in negligence. (*Id.* ¶¶ 12–34, 39–47, 52 (incorporating the negligence cause of action into the breach of fiduciary duty claim), 53–61). Thus, Plaintiff does not allege an intentional tort, making the effects test inapplicable.

Plaintiff has failed to establish a means by which this Court may exercise personal jurisdiction over Airborne for its actions in connection with the procurement of the insurance policy. Airborne had no direct contact with Florida associated with the procurement of the policy, and the mechanisms argued by Plaintiff to allow the exercise of personal jurisdiction without direct contact are inapplicable. Thus, Plaintiff's claims associated with the procurement of the insurance policy must be dismissed.

### B.    Minimum Contacts—Post-Crash Representation

The Court now turns to the breach of fiduciary duty claim arising from Airborne's alleged post-crash representation of Plaintiff. Airborne had some direct contact with Plaintiff in Florida regarding this claim. These communications were limited to email and possibly telephone calls. (Mar. Udey Aff. ¶¶ 11–14; Exs. 8, 9 to Mar. Udey Aff.; Apr. Ray Aff. ¶ 11). Airborne never sent any representatives or agents to Florida. (Apr. Ray Aff. ¶ 11). Plaintiff has not alleged that

Airborne's representation involved any proceedings or negotiations in Florida or that Airborne provided Plaintiff with any documents to be utilized or filed in Florida. (*See* Mar. Udey Aff. ¶¶ 11–13; Exs. 8, 9 to Mar. Udey Aff.). Instead, the representation was limited to procedures and negotiations taking place in Africa. Airborne negotiated with Guardrisk in South Africa, and the legal procedures took place in the South African courts. The representation regarded an insurance policy covering an aircraft located in West Africa. In the policy, coverage was limited to the continent of Africa, and the crash at issue occurred in West Africa. Such representation is insufficient to establish minimum contacts with Florida.

Indeed, the facts of Plaintiff's alleged breach of fiduciary duty claim are analogous to those in *Thomas v. Brown*, 504 F. App'x 845 (11th Cir. 2013). In *Thomas*, no personal jurisdiction existed over non-resident attorneys because they did not have minimum contacts with the forum. *Id.* at 849. The out-of-state defendants in *Thomas* represented the Florida-resident plaintiffs in litigation taking place in Ohio. *Id.* at 846. Like Airborne, the *Thomas* defendants had "no office, telephone, bank account, or property of any kind in the state of Florida"; they "d[id] not market themselves to Florida"; they did not solicit the plaintiffs; and they "did not conduct any matters related to [the] lawsuit in Florida." *Id.* at 848–49. Also like Airborne, "[t]he only contacts by [the defendants] with Florida regarding [the representation] involved telephone and electronic communications made with [the] Florida-resident [plaintiffs]." *Id.* at 848. The proceedings and negotiations "were not conducted in Florida," and the defendants never "traveled to Florida for anything connected with [the] matter." *Id.* Such "minimal contact with Florida is not the type that would 'lead a person to reasonably expect the possibility of ensuing litigation in a Florida court should some type of dissatisfaction or complications arise'" and does not establish "sufficient

minimum contacts with the state of Florida" to permit the exercise of personal jurisdiction. *Id.* at 849 (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996)).

Plaintiff's reliance on *Cronin* is misguided. In *Cronin*, the defendant insurance broker allegedly "entered into an oral contract to provide insurance coverage in Florida to a woman who was hospitalized in Florida." 980 F.2d at 670. The defendant was alleged to have breached that oral contract. *Id.* Unlike this case, the insurance policy in *Cronin* was purchased by a Florida resident to insure against a risk in Florida. *Cronin* also involved a cause of action not pleaded here—failure to perform on a contract in Florida. *Id.*

The case of *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996) is also instructive. In determining that it could exercise personal jurisdiction over the defendants, the *Robinson* court focused on the fact that the defendants "rendered estate planning services to the Decedent knowing that he resided in Florida . . . [and] that the will would be probated, and the trust administered, in Florida." *Id.* at 259. The court also noted that the defendants had "drafted documents intending for Florida law to govern." *Id.* Airborne engaged in no such purposeful availment.

Plaintiff has failed to establish that Airborne had sufficient minimum contacts with this forum in order to anticipate being haled into court here. Thus, an exercise of personal jurisdiction over Airborne in this case would violate the Due Process Clause.

## C.     Fair Play and Substantial Justice

In rare cases, "considerations [of fair play and substantial justice] may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir. 1990) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). This is not such a case. Where, as here, a plaintiff

fails to make any showing of purposeful availment and foreseeability, traditional notions of fair play and substantial justice would be offended by the exercise of personal jurisdiction. *See Thomas*, 504 F. App'x at 849 ("Because we conclude that Defendants do not have minimum contacts with Florida, we need not address whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice." (quotation omitted))*; L.O.T.I. Grp. Prods. v. Lund*, 907 F. Supp. 1528, 1534 (S.D. Fla. 1995) (finding that it would "offend traditional notions of fair play and substantial justice" to assert personal jurisdiction over a non-resident defendant who did "not have even minimum contacts with the forum").

## IV.     MOTION TO DISMISS BY CLYDE

This Court also lacks personal jurisdiction over Clyde in regard to Plaintiff's professional negligence claim. After the crash, upon Airborne's recommendation, Plaintiff retained Clyde as legal counsel to guide Plaintiff through negotiations and litigation with Guardrisk. (Am. Compl. ¶ 34). Clyde also represented Airborne. (*Id.* ¶¶ 33, 36). According to Plaintiff, Clyde failed to properly notify Plaintiff of Plaintiff's potential claims against Airborne and failed to disclose its conflict of interest in representing both Airborne and Plaintiff. (*Id.* ¶ 36). Clyde now seeks dismissal of the claims against it for lack of personal jurisdiction or, in the alternative, for improper venue.

### A.     Minimum Contacts

As with Airborne, Plaintiff attempts to utilize the effects test by characterizing its claim as an intentional tort, but Plaintiff has not stated a claim for an intentional tort against Clyde. Plaintiff's claim against Clyde is titled "Professional Negligence," (Am. Compl., Count IV), and the facts alleged support a claim for negligence, (*id.* ¶¶ 34–36, 59, 61(g)–(h), 70–84). The closest Plaintiff's Amended Complaint comes to alleging an intentional tort is the allegation that Clyde

"affirmatively state[d] that it ha[d] no conflict of interest that would preclude its competent representation of the interests of [Plaintiff]." (*Id.* ¶ 73). However, there is no indication that this alleged misrepresentation was intentional or fraudulent, and Plaintiff has not offered any evidence to support an inference of intentional conduct. The conclusory statement in Plaintiff's Affidavit that "in retrospect [the conflict of interest] was deliberately hidden from me," (June 8, 2014 Udey Aff. ("June Udey Aff."), Doc. 79-1, ¶ 11), and the opinion that the "U.K. based legal representation was a con," (*id.* ¶ 17), are insufficient to somehow transform Plaintiff's claim into an intentional tort. Plaintiff has failed to identify any intentional action taken by Clyde toward Plaintiff to justify an application of the effects test.

Plaintiff has also failed to otherwise establish minimum contacts. Clyde's representation of Plaintiff involved United Kingdom attorneys representing Plaintiff in litigation that occurred in South Africa. While Clyde obviously communicated with Plaintiff, the communications were regarding the negotiations and litigation taking place in South Africa, stemming from the plane crash in West Africa, and involving claims against the South African insurer. As explained previously in detail, *see* Section III.B, such representation is insufficient to establish personal jurisdiction in Florida.

Plaintiff makes a round-about argument that the representation should have involved Florida because claims should have been brought in Florida. In other words, according to Plaintiff, if Clyde had not committed malpractice, it would have brought claims on behalf of Plaintiff against Airborne in Florida, thus representing Plaintiff in Florida. Plaintiff's argument is without merit. Even if the Court were to accept the questionable proposition that hypothetical representation can confer personal jurisdiction, Clyde could not have properly brought claims against Airborne in Florida for the asserted claims due to a lack of personal jurisdiction.

Nevertheless, there are some important distinctions between Clyde's representation of Plaintiff and Airborne's representation that, while not sufficient to confer jurisdiction, should be addressed. First, Plaintiff asserts that one of the attorneys from Clyde, Alex Stovold, "requested a meeting" with Plaintiff when Mr. Stovold was traveling to Miami, Florida, on other business. (June Udey Aff. ¶ 8(a)). As evidence of this, Plaintiff submitted an email from Mr. Stovold to Plaintiff stating:

> "There is a likelihood I will be in Miami briefly during the week, probably on Wednesday. I had hoped I might be able to meet with you, but I do not think that will be possible due to my other work commitments that day. It is conceivable, if you are available, that we could have a brief meeting in central Miami on Wednesday, but subject to finalising the letter this week, I don't believe that would be necessary, nor would I want you to travel for such a brief meeting. Nevertheless, I wanted to let you know I am likely to be in Florida!"

(Jan. 5, 2011 Email from Stovold to Udey, Doc. 79-2, at 23). Far from "requesting" a meeting with Plaintiff, it appears that Mr. Stovold was extending a courtesy to his client since Mr. Stovold was going to be in the State. Moreover, Plaintiff does not assert that the meeting ever actually took place, and the evidence indicates that it did not. In any event, Mr. Stovold's offer to meet with his client face-to-face when Mr. Stovold was going to be nearby for other business is not sufficient to confer personal jurisdiction over Clyde. *See Harris v. Shuttleworth & Ingersoll, P.C.*, 831 So. 2d 706, 706–07 (Fla. 4th DCA 2002) (concluding no personal jurisdiction existed over Iowa attorney who negligently handled Florida resident's trust proceeds stemming from Iowa property where the attorney "traveled to Florida concerning the Iowa property on at least one occasion").

In addition, Plaintiff alleges that Clyde's representation of Plaintiff extended to representation in Florida because Clyde was agreeable to joining as co-counsel on claims filed by Plaintiff in Florida. Again, it is not alleged that Clyde ever joined in such representation, but even if it did, none of the malpractice allegations stem from any representation in Florida. Therefore,

such contacts cannot serve as the basis for personal jurisdiction. *Sloss Indus. Corp.*, 488 F.3d at 925 ("[A] defendant's contacts with the forum state . . . must be related to the plaintiff's cause of action or have given rise to it." (quotation omitted)).

Finally, Plaintiff makes much of the fact that Clyde considered the Aircraft lease agreement, which is controlled by Florida law, to be key evidence in the South African litigation, rendering a Florida law expert necessary. Although Plaintiff does not explain how this fact could possibly constitute a contact with Florida, it cites *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1235 (M.D. Fla. 1999). In *Kim*, there was a contract at issue that was governed by Florida law—the retainer agreement between the plaintiff and the foreign attorneys—which the plaintiff alleged the attorneys breached. *Id.* at 1235–36. There are no analogous facts at issue here.[6] The contract in this case is a lease agreement to which Clyde was not a party and is not alleged to have breached. The mere fact that an otherwise unrelated Florida contract became a key piece of evidence in the South African litigation cannot serve as a basis for exercising personal jurisdiction over Clyde. S*ee Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221–23 (11th Cir. 2009) (emphasizing that Due Process requires relatedness of the contact with the forum and the injury).

Ultimately, the only contact Clyde had with Florida was the fact that Plaintiff lives here. Clyde is a United Kingdom-based law firm that was hired[7] to represent Plaintiff to recover proceeds from a plane crash that occurred in West Africa. The litigation took place in South Africa. The legal representation occurred in South Africa and the United Kingdom. Such representation is

---

[6] *Kim* is also distinguishable on the basis that the out-of-state attorney contracted with a Florida attorney to act as the defendants' "co-counsel and general agent while performing legal representation . . . in the state of Florida." 71 F. Supp. 2d at 1235.

[7] Plaintiff's allegation that Airborne, rather than Plaintiff, reached out to the United Kingdom to hire Clyde is irrelevant. Minimum contacts are based on the defendant's actions, and it is undisputed that Clyde did not reach out to Florida. *Asahi*, 480 U.S. at 109 ("[M]inimum contacts must be based on an act of the defendant.").

insufficient to confer personal jurisdiction over Clyde in Florida. *Compare Thomas*, 504 F. App'x 848–49, *with Robinson*, 74 F.3d 255–59.

### B.      Fair Play and Substantial Justice

For the same reasons set forth in Section III.C, exercising personal jurisdiction over Clyde would offend traditional notions of fair play and substantial justice. Even more convincing here, however, is the fact that the contract signed by Plaintiff retaining Clyde as legal counsel contains a forum selection clause and a choice of law provision. Under these provisions, "any dispute or claim arising out of or in connection with such contract or its subject-matter or formation (including, without limitation, non-contractual disputes or claims) shall be: (a) governed by and construed in accordance with English law; and (b) subject to the exclusive jurisdiction of the English courts." (2010 Terms of Business, Ex. C to Langley Aff., Doc. 75-1, ¶ 26).

Plaintiff argues that he never received the 2009 Terms of Business document referenced by Clyde, but instead received the 2010 Terms of Business document. (June Udey Aff. ¶ 6). This is a distinction without a difference. The choice of law and forum selection clauses in each document are identical, (*Compare* 2009 Terms of Business, Doc. 85-2, ¶ 26 *with* 2010 Terms of Business ¶ 26), and Plaintiff does not dispute the fact that it received the 2010 agreement, which contains the law and venue provisions. Instead, Plaintiff argues that its agent signed the agreement without reading it and that he "would not have understood [the agreement's] technical terms without an explanation." (June Udey Aff. ¶ 6). Plaintiff's argument is contrary to one of the most basic tenants of contract law: "parties who sign contracts will be bound by them regardless of whether they have read them or understood them." *MCC-Marble Ceramic Ctr., Inc. v. Ceramica Nuova d'Agostino, S.P.A.*, 144 F.3d 1384, 1387 n.9 (11th Cir. 1998); *see also Marco Forwarding Co. v. Cont'l Cas. Co.*, 430 F. Supp. 2d 1289, 1295 (S.D. Fla. 2005) ("If [the plaintiff] neglected

to read the contracts and failed to consider the ramifications of the forum selection clauses in each of them, it did so at its own peril.").

## V.   CONCLUSION

Plaintiff has failed to establish minimum contacts with Florida by either Airborne or Clyde, and requiring them to litigate in this forum runs contrary to traditional notions of fair play and substantial justice. As such, this Court cannot exercise personal jurisdiction over Airborne and Clyde without violating the Due Process Clause. Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Airborne's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (Doc. 86) is **GRANTED**.

2. Clyde's Motion to Dismiss for Lack of Personal Jurisdiction, and Motion to Quash Improper Service of Process or, Alternately, Motion to Dismiss for Improper Venue (Doc. 75) is **GRANTED**.

3. The claims against Airborne and Clyde are **DISMISSED without prejudice**.

4. Plaintiff's Motion to Modify Case Management & Scheduling Order, Extend Deadlines & to Proceed with Discovery (Doc. 80) is **GRANTED in part**. Plaintiff and the remaining Defendants may submit a proposed Amended Case Management Report **on or before April 1, 2015**.

5. The Clerk is directed to **TERMINATE** Airborne and Clyde as defendants in this case and amend the case style accordingly.

**DONE** and **ORDERED** in Orlando, Florida on March 18, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record