UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**AVIATION ONE OF FLORIDA, INC.,**

        **Plaintiff,**

**v.**                                 **Case No:  6:13-cv-1243-Orl-41DAB**

**AIRBORNE INSURANCE
CONSULTANTS (PTY), LTD, AFRICA
TOURS AND TRAVEL, LLC d/b/a S.A.
GUINEE, MOHAMED DIAOUNE and
CLYDE & CO., LLP,**

        **Defendants.**

_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's Motion to Alter or Amend Order of Dismissal ("Motion for Reconsideration," Doc. 94); Plaintiff's Alternative Motion for Rule 54(B) Certification ("Rule 54(b) Motion," Doc. 95); Plaintiff's Notice of Settlement and Stipulation for Entry of Final Judgment Against Defendant Africa Tours and Travel, LLC D/B/A, S.A. Guinee ("Motion for Consent Judgment," Doc. 103); and Plaintiff's Motion for Entry of Order Dismissing Defendant, Mohamed Diaoune ("Motion to Dismiss," Doc. 104). As set forth herein, Plaintiff's Motion for Reconsideration will be denied, but Plaintiff will be given the opportunity to seek limited jurisdictional discovery; Plaintiff's Alternative Motion will be denied as moot; Plaintiff's Motion for Consent Judgment will be granted in part; and Plaintiff's Motion to Dismiss will be granted.

## I.   BACKGROUND

Plaintiff's claims are all tied to the crash of Plaintiff's Beech model 1900C aircraft (the "Aircraft"), in Guinea, West Africa. (Am. Compl., Doc. 67, ¶¶ 8, 27, 30, 34). At the time of the

crash, the Aircraft was leased by Africa Tours and Travel, LLC d/b/a S.A. Guinee ("S.A. Guinee"), a Georgia limited liability company. (*Id.* ¶¶ 4, 12–13). The lease agreement required S.A. Guinee to procure and maintain insurance on the Aircraft, and it set forth the nature of the coverage required. (*Id.* ¶¶ 14–15). S.A. Guinee engaged Airborne Insurance Consultants (PTY), LTD ("Airborne"), an insurance broker located in South Africa, to procure the necessary insurance on S.A. Guinee's behalf. (*Id.* ¶¶ 2, 14). Airborne procured insurance from Guardrisk Insurance Company, Ltd. ("Guardrisk"), also located in South Africa. (*Id.* ¶ 19 & n.1). The policy named both S.A. Guinee and Plaintiff as the "Insured." (*Id.*).

After the crash, Guardrisk denied Plaintiff's claim for several reasons, including the fact that the individual piloting the Aircraft was not listed as an approved pilot on the insurance policy. (*Id.* ¶ 30 & n.2). Plaintiff also discovered that the policy did not contain the Breach of Warranty endorsement for the full hull value. (*Id.* ¶ 31). Throughout the claims process, Airborne served as Plaintiff's representative in negotiations with Guardrisk. (*Id.* ¶¶ 32–33). At some point after the denial, Airborne referred Plaintiff to its legal counsel, Clyde & Co., LLP ("Clyde"), which is located in the United Kingdom. (*Id.* ¶¶ 5, 34). According to Plaintiff, Clyde failed to disclose a conflict of interest created by representing both Airborne and Plaintiff. (*Id.* ¶¶ 35–36).

Based on these allegations, Plaintiff asserted claims against Airborne for negligence (Count I); breach of fiduciary duty (Count II); and common law indemnity (Count III). Plaintiff asserted a claim against Clyde for professional negligence (Count IV). Plaintiff also asserted a claim against S.A. Guinee for breach of lease (Count VI) and a claim for breach of guarantee against S.A. Guinee's principal, Mohamed Diaoune. This Court dismissed all claims against Airborne and Clyde based on a lack of personal jurisdiction, (Mar. 18, 2015 Order ("Dismissal Order"), Doc. 93, at 17), and at the time, the claims against S.A. Guinee and Diaoune remained pending.

This case's long and somewhat complicated procedural history prior to dismissal of Airborne and Clyde is also relevant to the current analysis. Plaintiff first filed its Complaint (Doc. 1) in August 2013, but it was unable to serve Airborne, a foreign entity, until January 2014, (*see* Letter of Rogatory, Doc. 28; Airborne's Mot. for Extension of Time, Doc. 31, ¶ 2). Between extensions of time, (*see, e.g.*, Jan. 30, 2014 Order, Doc. 32), motions for default and to set aside default, (Doc. Nos. 16, 17, 29), discovery disputes, (*see, e.g.*, April 10, 2014 Order, Doc. 56), and the filing of an Amended Complaint, this litigation was already complicated before it even really began. One of the results of the early litigation of this case was that discovery was stayed pending a decision on whether to allow an amendment to the Complaint. (April 10, 2014 Order at 1). To complicate matters further, this case was transferred to the undersigned in July 2014 after the substantial litigation history of this case referenced above had already occurred. (Reassignment of Case, Doc. 78).

In the Amended Complaint, Plaintiff added Clyde as a Defendant, and both Airborne and Clyde filed motions to dismiss for lack of personal jurisdiction (Doc. Nos. 75, 86). Around the same time, Plaintiff filed a Motion to Modify Case Management & Scheduling Order, Extend Deadlines & to Proceed with Discovery Including Jurisdictional Discovery ("Discovery Motion," Doc. 80). The main thrust of Plaintiff's Discovery Motion related to the previous stay of discovery and Plaintiff's contention that the stay had been lifted when the Court granted Plaintiff's Motion to Amend—although the stay was not specifically addressed in the Court's Order doing so. Plaintiff asserted that Defendants were failing to comply with their discovery obligations in light of the lift of the stay. Based on the confusion with regard to the discovery stay, Plaintiff requested an extension of deadlines set forth the Case Management and Scheduling Order ("CMSO," Doc. 57). Plaintiff also sought to conduct jurisdictional discovery with regard to Clyde.

Ultimately, the Court granted Airborne and Clyde's motions to dismiss based on a lack of personal jurisdiction. (Dismissal Order at 17). In doing so, the Court did not address any of the alternative means for dismissal argued by the parties. Further, Plaintiff's Discovery Motion was denied insofar as it sought relief against Airborne or Clyde. (*See id.*).

Plaintiff now seeks reconsideration of the Order dismissing the claims against Airborne and Clyde for lack of personal jurisdiction.

## II.    LEGAL STANDARD

District courts are afforded considerable discretion to reconsider prior decisions. *See Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1231–32 (11th Cir. 2010) (discussing reconsideration of interlocutory orders); *Lamar Advert. of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 488–89, 492 (M.D. Fla. 1999) (discussing reconsideration generally and under Federal Rule of Civil Procedure 54(b)); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994) (discussing reconsideration under Rule 59(e) and Rule 60(b)). Courts in this District recognize "three grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *McGuire v. Ryland Grp., Inc.*, 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007) (quotation omitted); *Montgomery v. Fla. First Fin. Grp., Inc.*, No. 6:06-cv-1639-Orl-31KRS, 2007 WL 2096975, at *1 (M.D. Fla. July 20, 2007).

"Reconsideration of a previous order is an extraordinary measure and should be applied sparingly." *Scelta v. Delicatessen Support Servs., Inc.*, 89 F. Supp. 2d 1311, 1320 (M.D. Fla. 2000). "[M]otions for reconsideration should not be used to raise arguments which could, and should, have been previously made." *Id.* (quotation omitted). Stated differently, "[a] party who fails to present its strongest case in the first instance generally has no right to raise new theories or

arguments in a motion for reconsideration." *McGuire*, 497 F. Supp. 2d at 1358 (quotation omitted). To permit otherwise would "essentially afford[] a litigant two bites at the apple." *Am. Home Assurance Co.*, 763 F.2d at 1239 (quotation omitted).

### III.   ANALYSIS

Plaintiff argues that this Court committed clear error in five ways: (1) by "misunderstanding" the definition of Breach of Warranty ("BOW") endorsement; (2) by determining that Plaintiff did not plead any claims for intentional torts; (3) by making impermissible findings of fact; (4) by incorrectly determining that the venue was improper with regard to Clyde based on a forum selection clause; and (5) by not allowing jurisdictional discovery. Although Plaintiff addresses its arguments simultaneously to both Airborne and Clyde, the analysis to each Defendant is unique. Therefore, the Court will address each argument separately as to each Defendant.

### A.   BOW Endorsement

#### 1.   Airborne

Plaintiff argues that the Court "misunderstood" what a BOW endorsement entailed, which led the Court to incorrectly determine that Airborne's alleged failure to obtain or maintain such an endorsement did not generate sufficient minimum contacts with the forum. Specifically, Plaintiff argues that a BOW endorsement would have protected Plaintiff only—it would not have provided any benefit to S.A. Guinee. Therefore, Plaintiff argues that there was an independent contract between Plaintiff and Airborne. As articulated by Airborne, however, even if Plaintiff's legal description of a BOW endorsement is correct, it would have created an independent contract between Plaintiff and the *insurer*—not Airborne, the broker. Further, in its previous Order, the Court acknowledged that Plaintiff was an insured under the policy procured by Airborne. The fact

that it would have been the only insured to benefit from a BOW endorsement does not change the previous analysis with regard to the procurement and maintenance of the insurance policy. As noted, "Airborne had no direct contact with Florida associated with the procurement of the policy." (Dismissal Order at 9). Plaintiff's descriptions of a BOW endorsement and argument based thereon does not change the Court's previous analysis with regard to Airborne.

### 2.   *Clyde*

Plaintiff does not articulate how any purported misunderstanding by the Court with regard to the BOW endorsement has any impact on its analysis with regard to Clyde. Instead, Plaintiff merely repeats its allegations that Clyde had a conflict of interest when it represented both Plaintiff and Airborne because Plaintiff had claims against Airborne based on the failure to obtain or maintain the BOW. Although included in Plaintiff's BOW argument section, this argument really goes to whether Plaintiff adequately pleaded intentional tortious conduct by Clyde, which is addressed below.

### B.   **Intentional Tortious Conduct**

### 1.   *Airborne*

Previously, Plaintiff argued that this Court could exercise personal jurisdiction over its breach of fiduciary duty claim against Airborne under the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984), which allows the establishment of minimum contacts where the alleged tort "was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008). The Court determined that the effects test was inapplicable because Plaintiff only alleged negligent breaches by Airborne. Plaintiff now argues that breach of fiduciary duty is

always intentional; under Florida law, according to Plaintiff, there is no such thing as negligent breach of fiduciary duty. Plaintiff is incorrect.

Breach of fiduciary duty can certainly be an intentional tort, and the cases cited by Plaintiff support that contention. They do not, however, preclude the existence of a negligent breach of fiduciary duty claim. Moreover, Florida caselaw makes clear: "A claim for breach of fiduciary duty may arise out of either negligent or intentional conduct. When the conduct underlying the breach is intentional, the breach is intentional; when the conduct underlying the breach is negligent, the breach is negligent." *Palafrugell Holdings, Inc. v. Cassel*, 825 So. 2d 937, 939 n.1 (Fla. 3d DCA 2001), *opinion corrected by*, 854 So. 2d 225 (Fla. 3d DCA 2003); *see also Daniel v. Coastal Bonded Title Co.*, 539 So. 2d 567, 568 (Fla. 5th DCA 1989) (recognizing both intentional and negligent breach of fiduciary duty claims). Here, as set forth fully in the Court's previous Order, the conduct alleged by Plaintiff underlying its claim for breach of fiduciary duty sounds in negligence; it does not state a claim for an intentional breach of fiduciary duty. Plaintiff has established no basis for the Court to reconsider its analysis.

2.    *Clyde*

In its Dismissal Order, the Court also determined that Plaintiff failed to meet its burden under the effects test as to Clyde because the professional negligence claim, as pleaded, asserted no intentional tortious conduct by Clyde. Although Plaintiff categorizes this determination as a finding of fact, it was not. Rather, the Court made the determination that Plaintiff failed to meet its burden. On the record before the Court at the time of the previous Order, the Court's determination was accurate, and Plaintiff has not provided any basis for reconsideration of that determination. Nevertheless, because, as set forth below, Plaintiff may be permitted the opportunity to conduct limited jurisdictional discovery with regard to Clyde, if there is a new basis

to assert intentional conduct based on any discovery that is permitted, Plaintiff may reassert personal jurisdiction under the effects test as to Clyde.

### C.    Findings of Fact

Plaintiff next argues that the Court made impermissible findings of fact in determining that personal jurisdiction was lacking.

#### 1.    Airborne

In addressing whether Plaintiff established minimum contacts by Airborne during the procurement of the insurance policy, the Court noted that Plaintiff failed to identify a single communication between Plaintiff and Airborne prior to the crash. Plaintiff again construes the Court's determination that it failed to meet its burden as a "finding of fact"; it was not. Nevertheless, Plaintiff has now attached a list of "60 references to telephone calls to/from [Plaintiff's representative] in Florida." (Mot. for Recons. at 14 (emphasis omitted)). Plaintiff apparently misunderstands the Court's previous analysis because all of the communications set forth by Plaintiff are inapplicable.

Previously, the Court explained that because Plaintiff was asserting specific personal jurisdiction, Defendants' contacts with the forum "must be related to [Plaintiff's] cause of action or have given rise to it." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (quotation omitted). Accordingly, the Court noted that Plaintiff's claims against Airborne arose from two separate, independent events: the procurement of the insurance policy and the representation of Plaintiff in the post-crash negotiations. It was Plaintiff's burden to establish minimum contacts with regard to each separate claim. The lack of communications between Plaintiff and Airborne noted by the Court pertained solely to the first set of circumstances—the procurement of the insurance policy, which occurred prior to the crash. All sixty of the

communications noted by Plaintiff involve communications after the crash and relate to the second set of circumstances—the representation of Plaintiff with regard to obtaining benefits under the insurance policy. These communications are completely irrelevant to the issue of whether Plaintiff communicated directly with Airborne in connection with the procurement of the insurance policy.

In addition, Plaintiff argues that the Court improperly disregarded the Affidavit of Plaintiff's representative, which states: "From prior to the initial issuance of the Policy through the claims process, Airborne . . . communicated with me . . . in Florida by telephone, email, and U.S. Mail." (Udey Aff., Doc. 40, ¶ 8). Contrary to Plaintiff's argument, the Court considered the statements in the Affidavit, but it determined that this single unsupported, self-serving statement, which is not borne out by the evidence submitted by Plaintiff, was insufficient to meet Plaintiff's burden. Repeatedly, Plaintiff mischaracterizes communications between it and S.A. Guinee as communications between Plaintiff and Airborne. Moreover, Plaintiff does not provide a single detail of a telephone call or email that would constitute a communication between Airborne and Plaintiff with regard to the procurement of the insurance policy. The only alleged specific communication that occurred prior to the crash to which Plaintiff refers was a copy of the policy that was allegedly sent via U.S. Mail to Plaintiff's address by Airborne. It is undisputed that this was done at the behest of S.A. Guinee[1] and that the address was provided by S.A. Guinee to Airborne; this allegation was considered by the Court previously and is not a sufficient communication between Airborne and Plaintiff to confer personal jurisdiction.

Finally, Plaintiff argues that it communicated with Airborne with regard to the procurement of the insurance policy by marking up a draft of the policy with questions and notes. In the current

---

[1] Whether or not Plaintiff instructed S.A. Guinee to have a copy of the policy sent to Plaintiff is irrelevant. Such a communication is between Plaintiff and S.A. Guinee, not Plaintiff and Airborne.

motion, Plaintiff argues that the Court made a finding that Plaintiff did not mark up the policy. Plaintiff misconstrues the Court's Dismissal Order. Therein, the Court, relying on allegations and evidence submitted by Plaintiff, noted that S.A. Guinee sent Plaintiff a draft policy, which Plaintiff marked up. Plaintiff then sent the marked policy back to S.A. Guinee. Thereafter, S.A. Guinee either sent the policy to Airborne or discussed the notes with Airborne. Nowhere did the Court determine that Plaintiff was not the one that marked up the policy—indeed, the Court proceeded on the assumption that Plaintiff did mark up the policy.

Plaintiff does not appear to take issue with this explanation of events, but instead it argues that this was a communication between Plaintiff and Airborne. As set forth thoroughly in the Dismissal Order, there was no direct communication between Plaintiff and Airborne in this regard. As alleged by Plaintiff, all of Plaintiff's communications regarding the draft policy were with S.A. Guinee, not Airborne.

Accordingly, Plaintiff has not established that the Court made any erroneous findings of fact as to Airborne.

### 1.    *Clyde*

In the Dismissal Order, the Court noted that Clyde did not reach out to Florida to solicit Plaintiff as a client. This was mentioned in a footnote addressing Plaintiff's argument that Airborne, not Plaintiff, initially solicited Clyde. (Dismissal Order at 15 n.7). Plaintiff now argues that this was an erroneous finding of fact because the first "direct" contact Plaintiff had with Clyde was a phone call placed by Clyde. Plaintiff's argument misses the mark. It is inconsequential that the first time Plaintiff spoke with a representative of Clyde, it was during a phone call initiated by Clyde. Such facts in the context of Plaintiff's other allegations do not amount to Clyde "reaching

out" to Florida to solicit Plaintiff as a client. As Plaintiff itself argued in its previous motion, Clyde was solicited by Airborne in South Africa, and Airborne connected Clyde with Plaintiff.

Accordingly, Plaintiff has not established that the Court made any erroneous findings of fact with regard to Clyde.

### D.    Venue – Clyde

Next, Plaintiff argues that the Court wrongly determined that venue was improper based on a forum selection clause in the retainer agreement between Clyde and Plaintiff. The Court did not reach the issue of venue because it determined that it lacked personal jurisdiction over Clyde. While the forum selection provision was discussed, it was merely additional support for the notion that Clyde did not purposefully avail itself to the forum.

### E.    Jurisdictional Discovery

Finally, Plaintiff argues that this Court committed clear error by dismissing the claims against Airborne and Clyde without permitting Plaintiff to engage in jurisdictional discovery. In the Eleventh Circuit, plaintiffs have "a qualified right to conduct jurisdictional discovery." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (per curiam); *see also Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982) (noting that "jurisdictional discovery is not entirely discretionary"). Nevertheless, a plaintiff must appropriately seek such discovery, *see United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009), and the plaintiff must "specify what [it thinks] could or should be discovered." *Posner*, 178 F.3d at 1214 n.7.

#### 1.    *Airborne*

Plaintiff's argument that it should have been permitted to conduct jurisdictional discovery as to Airborne fails because it never requested jurisdictional discovery as to Airborne nor has it

articulated what discovery it would have sought from Airborne or how such discovery could have led to information relevant to personal jurisdiction over Airborne.

Despite Plaintiff's contrary contentions at this stage, Plaintiff never sought jurisdictional discovery as to Airborne. In the only motion addressing jurisdictional discovery—the Discovery Motion—the request for jurisdictional discovery was specifically aimed at Clyde, not Airborne. Plaintiff conflates the issue of jurisdictional discovery with merits discovery and the problems Plaintiff faced in light of the stay of discovery issued early in the litigation. The background and specifics of the stay are relevant here. Airborne filed a motion to dismiss for lack of personal jurisdiction (Doc. 34). Shortly thereafter, the CMSO was issued, setting various deadlines, including discovery deadlines. In light of those deadlines and its contention that this Court lacked personal jurisdiction over it, Airborne sought "an order staying all discovery *on the merits*" of the case pending a ruling on Airborne's motion to dismiss. (Apr. 2, 2014 Mot. to Stay, Doc. 46, at 1 (emphasis added)). That motion was granted. (Doc. Nos. 55, 56[2]). Neither the motion to stay discovery nor the Orders granting that motion mentioned jurisdictional discovery.

Even now, the discovery issues Plaintiff complains of with regard to Airborne relate to the merits of Plaintiff's claims. Specifically, Plaintiff cites to several docket entries that it claims were "requests" for discovery. (Mot. for Recons. at 3). The first, docket entry 70, is an Objection filed by Airborne—not Plaintiff—to a Report and Recommendation addressing whether Plaintiff should be permitted to amend its Complaint. Plaintiff provides no pincite or explanation as to how this document is relevant to the issue here, (Mot. for Recons. at 3, 4); Airborne does not even mention discovery—much less jurisdictional discovery—in its Objection. Second, Plaintiff cites docket

---

[2] The motion to stay was granted on April 10, 2014 (Doc. 55), and that Order was amended (Doc. 56) on the same day to correct a typographical error irrelevant to this discussion.

entry 71, which is Plaintiff's Response to Airborne's Motion to Strike the Amended Complaint. Again, Plaintiff provides no pincite to the allegedly relevant information in this document, and the only explanation provided is that it "detail[s] history and missing records." (Mot. for Recons. At 3, 4). In this document, Plaintiff responds to Airborne's request to continue the stay of discovery and argues against such a stay. However, these arguments are clearly aimed at full merits discovery, and Plaintiff never mentions or requests jurisdictional discovery.

Plaintiff next relies on docket entries 80—Plaintiff's Discovery Motion—and 80-1—a proposed request to produce and proposed interrogatories. In these documents, Plaintiff does address jurisdictional discovery, but all such requests are aimed at Clyde only. In the Discovery Motion, all of Plaintiff's requests and arguments with regard to Airborne involve the merits of the case and an extension of discovery deadlines. Furthermore, the proposed request to produce and interrogatories attached to the Discovery Motion are clearly and specifically addressed to Clyde only. (*See* Doc. 80-1 at 1 ("Plaintiff's Jurisdictional Discovery Directed to Defendant, Clyde & Co, LLP")).

Plaintiff also cites several documents, without explanation or pincite, that do not appear to have any relevance to the issue of jurisdictional discovery. Plaintiff cites the Affidavit of its counsel (Doc. 79-7) and the four exhibits attached thereto (Doc. Nos. 79-8–79-11), totaling approximately fifty-six pages altogether. The only explanation given is that this is an "affidavit of undersigned counsel." (Mot. for Recons. at 3). The Court is not required to, and will not, sift through lengthy documents to try and create arguments not articulated by the parties. Nevertheless, from what the Court can discern, the documents involve information voluntarily provided by Clyde to Plaintiff's counsel. None of these communications involve any sort of request to the Court for jurisdictional discovery. Similarly, Plaintiff cites a Minute Entry for a Preliminary Pretrial

Conference before Magistrate Judge David A. Baker (Doc. 54). Plaintiff provides no explanation of how this relates to jurisdictional discovery and no mention of such discovery is provided in the Minute Entry. Finally, Plaintiff cites its Amended Complaint to support its contention that it "advised the Court of its need for discovery more than a half-dozen times." (Mot. for Recons. at 6). There is no request for, or mention of, jurisdictional discovery in the Amended Complaint.

Based on the tedious review of the above-cited documents, it is clear that—despite Plaintiff's conclusory assertions to the contrary—Plaintiff never requested jurisdictional discovery as to Airborne. This, in and of itself, is a sufficient basis to conclude that the Court did not commit clear error by not permitting jurisdictional discovery with regard to Airborne. *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 830 & n.8 (11th Cir. 2012) (per curiam) (affirming district court's dismissal for lack of jurisdiction without permitting jurisdictional discovery where plaintiff was "aware of the need for jurisdictional discovery" due to defendant's pending motion to dismiss, but plaintiff "never formally moved for any additional jurisdictional discovery and did not attempt to seek such discovery" and determining that plaintiff's motion to compel discovery on the merits of his claims was irrelevant to the issue of jurisdictional discovery); *United Techs.*, 556 F.3d at 1280–81 (affirming district court's dismissal for lack of jurisdiction without allowing jurisdictional discovery where plaintiff "expressly recognized the potential utility of jurisdictional discovery" but "never formally moved the district court for [such] discovery" and "instead, buried such requests in its briefs as a proposed alternative to dismiss[al]"); *Posner*, 178 F.3d at 1214 n.7 (determining that the plaintiff was not entitled to jurisdictional discovery where it never requested such discovery and only alluded to it in its response to the defendant's motion to dismiss).

The Court need not only rely on that basis, however, because Plaintiff also failed to articulate what jurisdictional information it would seek or that it believes would be discovered as

to Airborne. Even in its current Motion for Reconsideration, where the focus is on jurisdictional discovery, Plaintiff's only references to discovery with regard to Airborne go to the merits of its claims or seek to engage in a fishing expedition to find an alternative basis for jurisdiction. Neither bases are sufficient to establish a need for jurisdictional discovery. *Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.*, 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013) ("The purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction. It is *not* a vehicle for a fishing expedition in hopes that discovery will sustain the exercise of personal jurisdiction." (quotation omitted)); *see also Millennium Indus. Network, Inc. v. Hitti*, 11-62570-CIV, 2014 WL 324656, at *3 (S.D. Fla. Jan. 28, 2014) (denying jurisdictional discovery where, *inter alia*, the plaintiff was "not attempting to acquire evidentiary support for its jurisdictional allegations" but rather sought "to conduct discovery in order to assert a new basis for jurisdiction"); *JMA, Inc. v. Biotronik SE & Co. KG*, 12-CV-23466, 2013 WL 1402322, at *6 (S.D. Fla. Apr. 5, 2013) (denying jurisdictional discovery where plaintiff was "simply searching for a new basis for jurisdiction, not based on anything pled in the complaint"). Accordingly, Plaintiff has not established a basis for the Court to reconsider its previous order dismissing Airborne based on a lack of jurisdictional discovery.

2.    *Clyde*

Plaintiff also argues that the Court committed clear error by failing to allow jurisdictional discovery as to Clyde prior to dismissing the claims against Clyde for lack of personal jurisdiction. Unlike Airborne, Plaintiff did request that this Court allow it to conduct jurisdictional discovery as to Clyde prior to ruling on the motion to dismiss. However, Plaintiff has not shown that the Court's ruling on the motion to dismiss without permitting Plaintiff to conduct jurisdictional discovery as to Clyde was in error because Plaintiff has not established that its motion for

jurisdictional discovery should have been granted. Specifically, as currently drafted, Plaintiff's motion for jurisdictional discovery is overbroad, and Plaintiff has not adequately articulated how its proposed discovery could lead to appropriate jurisdictional information. Nevertheless, Plaintiff has articulated in its motion for reconsideration a basis upon which jurisdiction discovery could be proper.

In dismissing the claims against Clyde for lack of personal jurisdiction, this Court determined that Plaintiff failed to establish minimum contacts by Clyde with Florida. (Dismissal Order at 12–16). Specifically, the Court determined that Plaintiff had not alleged that Clyde committed any intentional tort, and therefore, the effects test was inapplicable here. The Court further concluded that Plaintiff failed to otherwise establish minimum contacts under the traditional analysis because all such contacts related to Clyde's representation of Plaintiff in forums outside of Florida. In arguing that it should have been permitted to conduct jurisdictional discovery, Plaintiff does not advance any arguments with regard to the traditional minimum contacts analysis. Instead, although not clearly articulated, Plaintiff appears to be seeking discoverable information relating to intentional tortious behavior by Clyde to support jurisdiction under the effects test.

Again, at this point, Plaintiff's discovery arguments are inadequate because the proposed discovery is not sufficiently tailored to such intentional conduct. Nevertheless, in the interests of justice, the Court will permit Plaintiff to file an amended motion for jurisdictional discovery. In that motion, Plaintiff should provide a narrowly tailored discovery request relating only to jurisdictional sufficiency under the effects test as to Clyde. Plaintiff should also explain what information Plaintiff expects such discovery to reveal. If Plaintiff's renewed motion for

jurisdictional discovery is granted, the Court will entertain a renewed motion for reconsideration as to Clyde only based on information gleaned from the additional discovery.

### IV.   S.A. GUINEE AND MOHAMED DIAOUNE

Plaintiff represents that all claims have been settled between Airborne and S.A. Guinee, resulting in an agreement for the entry of a consent judgment and the assignment of all claims to Airborne. While the Court will enter the consent judgment agreed to by the parties, it does not retain jurisdiction with regard to the enforcement of the settlement agreement and makes no findings with regard to the legitimacy of the agreement or the assignment of claims.

With regard to Diaoune, Plaintiff seeks to voluntarily dismiss its claims because Diaoune is judgment proof. For the reasons set forth in the Motion to Dismiss, it will be granted.

### V.   ALTERNATIVE MOTION FOR RULE 54(b) CERTIFICATION

In its Rule 54(b) Motion, Plaintiff sought alternate relief to its Motion for Reconsideration. Specifically, because the dismissal of Clyde and Airborne for lack of jurisdiction was a non-final, non-appealable order due to the fact that there were other remaining Defendants, Plaintiff sought certification under Rule 54(b) to make that Order immediately appealable. Given the foregoing analysis, the landscape of the litigation has changed and the Rule 54(b) Motion is moot. Nevertheless, because the matters involving Clyde are still pending before this Court but those involving Airborne have concluded, Plaintiff may file a new motion under Rule 54(b) with regard to Airborne if it so wishes.

### VI.   CONCLUSION

As set forth above, Plaintiff has failed to establish a basis for the Court to reconsider its Order as to Airborne. Additionally, while Plaintiff has not, at this point, established that the Court

should reconsider its Order as to Clyde, the Court will permit Plaintiff to seek limited jurisdictional discovery as to Clyde. If such discovery is granted, the Court will permit Plaintiff to file an amended motion for reconsideration on the narrow issue of personal jurisdiction under the effects test as to Clyde based on that discovery. Additionally, S.A. Guinee and Diaoune will be dismissed from this matter and the consent judgment will be entered against S.A. Guinee.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion to Alter or Amend Order of Dismissal (Doc. 94) is **DENIED**. However, **on or before February 26, 2016**, Plaintiff is permitted to file a motion seeking limited jurisdictional discovery as to Clyde, as set forth herein.

2. Plaintiff's Alternative Motion for Rule 54(B) Certification (Doc. 95) is **DENIED as moot**. However, Plaintiff may file a new motion under Rule 54(b) as to Airborne if it so chooses.

3. Plaintiff's Notice of Settlement and Stipulation for Entry of Final Judgment Against Defendant Africa Tours and Travel, LLC D/B/A, S.A. Guinee (Doc. 103), construed as a motion, is **GRANTED in part** and **DENIED in part**. It is granted insofar as it seeks entry of a consent judgment. It is denied in all other Respects.

4. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Africa Tours and Travel, LLC d/b/a S.A. Guinee in the amount of $4,001,000.00.

5. Plaintiff's Motion for Entry of Order Dismissing Defendant, Mohamed Diaoune (Doc. 104) is **GRANTED**. The claims against Defendant Mohamed Diaoune are **DISMISSED without prejudice**. The Clerk is directed to terminate Mohamed Diaoune as a Defendant in this case and amend the case style accordingly.

**DONE** and **ORDERED** in Orlando, Florida on February 11, 2016.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party