[DO NOT PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

### FOR THE ELEVENTH CIRCUIT
_____

No. 16-16187
Non-Argument Calendar
_____

D.C. Docket No. 6:13-cv-01243-CEM-DAB

AVIATION ONE OF FLORIDA, INC.,

Plaintiff-Appellant,

versus

AIRBORNE INSURANCE CONSULTANTS (PTY), LTD,
AFRICA TOURS AND TRAVEL, LLC,
d.b.a. S.A. Guinea,
MOHAMED DIAOUNE,
CLYDE & CO., LLP,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 11, 2018)

Before MARCUS, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

This case stems from the crash of Plaintiff-Appellant Aviation One of Florida, Inc.'s ("Aviation One") aircraft—a Beech model 1900C—in Guinea, West Africa, on September 1, 2009.  At the time of the accident, the aircraft was being leased by Defendant Africa Tours and Travel, LLC d/b/a S.A. Guinee[1] ("S.A. Guinee").   Under the lease, S.A. Guinee was responsible for obtaining and maintaining certain insurance coverage for the aircraft, which it procured through Defendant-Appellee Airborne Insurance Consultants (PTY), Ltd. ("Airborne"), an insurance broker based in South Africa.  However, Guardrisk Insurance Company, the South African-based insurer that issued the insurance policy, denied coverage for the accident.   Airborne represented Aviation One's interests in the ensuing coverage dispute with Guardrisk, but without success.  Aviation One then retained Airborne's legal counsel, Defendant-Appellee Clyde & Co., LLP ("Clyde"), in order to pursue recovery against Guardrisk in the South African courts.  But after paying nearly $300,000 in legal fees with no end in sight, Aviation One ceased its efforts against Guardrisk and then filed this complaint in federal district court in the Middle District of Florida.

In this action, Aviation One alleges that Airborne negligently failed to procure insurance coverage that would have protected Aviation One's interests in the aircraft after the crash and breached its fiduciary duty to Aviation One in

---

[1] S.A. Guinee is also referred to as "S.A. Guinea" at times in the record.  We use "S.A. Guinee" because that is how the company identifies itself in the underlying correspondence.

several other ways, and that Clyde committed various acts of professional negligence in assisting Aviation One in its efforts to recover its damages.  The district court dismissed Airborne for lack of personal jurisdiction, concluding that it lacked sufficient minimum contacts with Florida for the exercise of jurisdiction to satisfy the requirements of due process.  As for Clyde, the court dismissed the claims against it under the doctrine of *forum non conveniens* based on a forum-selection clause in the retainer agreement between Aviation One and Clyde.  Aviation One challenges both rulings on appeal and also contends that the court committed a few other procedural errors, including failing to permit jurisdictional discovery before dismissing the lawsuit.  After careful review, we conclude that the district court properly dismissed the claims against both Airborne and Clyde and that the asserted procedural errors do not provide a basis for reversal.  Accordingly, we affirm the district court.

## I.

The relevant facts are these.[2]  Aviation One was a corporation based in Daytona Beach, Florida.  In around August 2008, Aviation One leased a Beech

---

[2] If, as here, the district court does not conduct a discretionary evidentiary hearing on the issue, "the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant."  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  A prima facie case is one that is sufficient to withstand a motion for directed verdict.  *Id.*  The defendant may then submit affidavits to the contrary.  *Id.*  The district court must accept the allegations in the complaint as true if they are not controverted by the defendant's affidavits or deposition testimony.  *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).  Where "the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting

model 1900C aircraft, its primary asset, to S.A. Guinee, a Georgia LLC. S.A. Guinee planned to use the aircraft for charter flights in Guinea, West Africa.

The initial lease, which ran for a period of one year, required S.A. Guinee to procure and maintain insurance coverage on the aircraft, and it specified the nature of the necessary coverage. To that end, S.A. Guinee engaged Airborne, an aviation insurance broker based in South Africa, to procure the necessary insurance.

S.A. Guinee gave Airborne a copy of the lease and asked Airborne to obtain coverage naming both S.A. Guinee and Aviation One as insureds. Specifically, Aviation One was to be insured under a "breach of warranty" endorsement, which, according to Aviation One, creates a separate and distinct contractual status with the insurer so it could recover its loss under circumstances and conditions that would defeat recovery by S.A. Guinee.

Airborne had no direct contact with Aviation One during the process of procuring insurance. Instead, Airborne corresponded with S.A. Guinee's principals, Mohamed Diaoune and Ousmane Balde, who, in turn, corresponded with Aviation One's President, William Udey. S.A. Guinee added Udey as a "cc"

---

jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Any conflicts in the evidence must be resolved in the plaintiff's favor. *Id.*

Both parties have submitted evidence supporting their positions. So, in evaluating whether Aviation One established personal jurisdiction over Airborne, we consider this evidence, resolving all conflicts in Aviation One's favor, as well as Aviation One's allegations to the extent they are uncontroverted. In any case, the key facts are largely undisputed, and neither party raises any discrete issue about the relevant facts on appeal.

on a few emails between S.A. Guinee and Airborne.  Yet despite the lack of direct communication between Airborne and Aviation One, the evidence construed in Aviation One's favor shows that Airborne agreed to procure insurance in part for Aviation One, the Florida-based owner of the aircraft.

Airborne procured insurance coverage from Guardrisk, an insurance company based in South Africa.  The initial policy issued by Guardrisk listed both S.A. Guinee and Aviation One as insureds and ran for a period of one year, starting on August 18, 2008.  Airborne sent a copy of the policy to S.A. Guinee at Aviation One's address in Florida, which was the address S.A. Guinee provided to Airborne.  Airborne also submitted invoices to that same address, though S.A. Guinee paid the premiums.  The initial policy's coverage was geographically limited to the continent of Africa, where S.A. Guinee planned to operate, except for the aircraft's ferry flight from Florida to West Africa, which was also covered.

Both the lease and the policy were renewed around August 2009.  At that time, the aircraft was located in Africa, and the renewal policy was geographically limited to the continent of Africa.  Again, a copy of the policy was sent to Aviation One's address in Florida.

On September 1, 2009, the aircraft crashed during takeoff in Guinea, West Africa, causing extensive and irreparable structural damage.  The estimated total of repair was $1,145,000.00, making it a total loss.

After the accident, Guardrisk denied coverage under the renewal policy. Among the reasons cited for denying coverage, Guardrisk stated that the pilot at the time, Wilson, was not listed as an approved pilot on the insurance policy. Before the policy was renewed, S.A. Guinee had asked Airborne to add Duane Wilson as an approved pilot under the policy, but Airborne did not do so.

Aviation One, with Airborne serving as its representative, challenged Guardrisk's denial of insurance coverage.    Airborne and Aviation One communicated by email and phone during this time.  Airborne also retained legal counsel to represent Aviation One's interests in responding to Guardrisk. Meanwhile, Airborne notified Aviation One by email that a former employee had failed to procure the requested breach-of-warranty endorsement in the renewal policy.[3]

Ultimately, despite Airborne's representations that Aviation One was likely to prevail, Guardrisk rejected the arguments that were made on Aviation One's behalf and denied the claim.  Thereafter, Airborne referred Aviation One to its legal counsel, Clyde, which was familiar with the matter.  Aviation One then retained Clyde to pursue recovery against Guardrisk.

---

[3] It appears that the endorsement may have been included in the initial policy but was left out of the renewal policy.  The record is not entirely clear on the matter, however.  In any case, whether the endorsement was included in the initial policy is not directly relevant to the matters before us because the alleged harm arises from the renewal policy, which was the policy in effect at the time of the accident.

Before beginning representation, Clyde sent Udey, Aviation One's President, an email with an attached engagement letter outlining the scope and cost of representation, among other matters.  The engagement letter referred Udey to Clyde's "Terms of Business," which were also attached to the email, advising him to read them carefully and then sign and return the letter.  In signing the engagement letter, Udey represented that he agreed to the terms in the letter and the attached Terms of Business.  Significantly, the Terms of Business included a choice-of-law and forum-selection provision stating that all disputes between Udey and Clyde arising out of the representation "shall be:  (a) governed by and construed in accordance with English law; and (b) subject to the exclusive jurisdiction of the English courts."

Ultimately, Aviation One abandoned its claims against Guardrisk when pursuing the litigation in South African courts proved prohibitively expensive. Aviation One failed to recoup any of its losses, despite paying Clyde nearly $300,000 in legal fees.

## II.  Procedural History

Understandably frustrated by the loss of its primary asset and the fruitless and costly efforts to recover from the insurer, Aviation One retained local counsel and then sued Airborne, Clyde, S.A. Guinee, and Diaoune in federal district court in Florida.  Before this appeal was brought, Aviation One settled its claims against

7

S.A. Guinee, resulting in a consent judgment against S.A. Guinee and the dismissal without prejudice of the claims against Diaoune, who personally guaranteed S.A. Guinee's obligations under the lease.   Accordingly, only the claims against Airborne and Clyde are at issue.

In an amended complaint, Aviation One brought three causes of action against Airborne ("Negligence"; "Breach of Fiduciary Duty"; and "Common Law Indemnity").   Aviation One alleged that Airborne negligently failed to procure insurance in accordance with the lease—specifically the breach-of-warranty endorsement—and that it breached its fiduciary duty to Aviation One in a number of ways.   These breaches included failing to obtain the breach-of-warranty endorsement, failing to inform Aviation One of the lack of such coverage, representing Aviation One in the coverage dispute despite knowing that it was at fault for failing to procure the requested coverage, and hiring legal counsel that represented Airborne's interests also.   Aviation One alleged that it would have recovered under the insurance policy "but for the negligence of Defendant Airborne" in breaching its fiduciary duties.   As for the Indemnity claim, Aviation One reiterated that it was damaged by "the negligent conduct of Airborne."

Aviation One brought one cause of action against Clyde ("Professional Negligence"), alleging that Clyde negligently provided legal services by, most

notably, failing to pursue claims against Airborne for its negligence or to advise Aviation One of the conflict created by its representation of Airborne.

Clyde moved to dismiss the complaint for lack of personal jurisdiction and for improper venue.  On the issue of venue, Clyde argued that the lawsuit should be dismissed based on the forum-selection clause in the Terms of Business to which Aviation One agreed.  Aviation One responded, asserting that the forum-selection clause was unenforceable as "unreasonable under the circumstances." Additionally, Aviation One asked the district court to enter an order permitting jurisdictional discovery as to Clyde "if the Court's preliminary review of filings related to the Clyde Motion to Dismiss presents a genuine jurisdictional issue."

Airborne filed a motion to dismiss the complaint for lack of personal jurisdiction, along with supporting evidence.  Airborne argued, *inter alia*, that it lacked sufficient minimum contacts with Florida, so maintenance of the lawsuit would offend due process.

Aviation One responded that exercising personal jurisdiction over Airborne was consistent with due process.  Relying mainly on this Court's decision in *Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc.*, 207 F.3d 1351 (11th Cir. 2000), Aviation One contended that "Airborne's negligent failure to obtain breach of warranty coverage insuring an insured's interests in Florida is sufficient to establish minimum contacts."  Aviation One also contended that its allegations

gave rise to a claim for the intentional tort of breach of fiduciary duty, so personal jurisdiction was proper under the "effects test" of *Calder v. Jones*, 465 U.S. 783, 788 (1984).   Notably, Aviation One did not suggest that any jurisdictional discovery was needed to resolve the issue of personal jurisdiction over Airborne.

On March 18, 2015, the district court entered an order dismissing the claims against Airborne and Clyde for lack of personal jurisdiction.  Without addressing Aviation One's request for jurisdictional discovery as to Clyde, the court concluded that Aviation One had failed to establish that Airborne or Clyde had sufficient "minimum contacts" with Florida so as to satisfy the requirements of due process.

Aviation One timely moved to alter or amend the dismissal order under Rule 59(e), Fed. R. Civ. P, arguing that the court misunderstood the significance of breach-of-warranty coverage, improperly resolved disputed facts, erred in refusing to apply the effects test for intentional torts, and failed to permit jurisdictional discovery.

In a February 2016 order, the district court rejected each of Aviation One's arguments but the last.  The court found no basis to reconsider its decision as to Airborne, but it found that jurisdictional discovery could be appropriate as to Clyde for purposes of establishing personal jurisdiction.  The court denied any efforts to obtain jurisdictional discovery as to Airborne because Aviation One "never sought

jurisdictional discovery as to Airborne" and "also failed to articulate what jurisdictional information it would seek or that it believes would be discovered as to Airborne."

After Clyde objected that jurisdictional discovery should not be permitted because the forum-selection clause provided an independent and alternative basis for dismissal, the district court revisited the issue and concluded that dismissal was appropriate under the doctrine of *forum non conveniens.* The court first found that enforcement of the forum-selection clause was not unreasonable or unfair. Next, the court conducted a modified *forum non conveniens* analysis, even though "neither party made any argument" as to that analysis, because the Supreme Court in 2013 clarified that forum-selection clauses are enforced through the doctrine of *forum non conveniens. See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013) ("*Atl. Marine*"). Concluding that the public-interest factors favored enforcing the forum-selection clause, the court dismissed the action against Clyde. The court therefore found moot Aviation One's request for jurisdictional discovery. Aviation One now appeals.

### III. Personal Jurisdiction over Airborne

We first address whether the claims against Airborne were properly dismissed for lack of personal jurisdiction. In addressing that issue, we also

consider whether the district court erred in dismissing Airborne before allowing jurisdictional discovery.

"We review *de novo* whether the district court had personal jurisdiction over a nonresident defendant." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). We review a district court's denial, grant, or limitation of discovery for an abuse of discretion. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280 (11th Cir. 2009).

A.    *Jurisdictional Discovery*

District courts have the power to order the discovery of facts necessary to determine their jurisdiction over the merits. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). Plaintiffs have "a qualified right to conduct jurisdictional discovery." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999). Jurisdictional discovery is appropriate when there is a dispute about the "facts that would support [the plaintiff's] allegations of jurisdiction." *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984).

But a district court does not abuse its discretion in dismissing the plaintiff's action for lack of personal jurisdiction, even before jurisdictional discovery occurs, when the plaintiff has not diligently pursued such discovery despite the opportunity to do so. *See Mazer*, 556 F.3d at 1280–81 (affirming the district court's dismissal of plaintiff's claims for lack of personal jurisdiction before the plaintiffs conducted

12

jurisdictional discovery).   Indeed, in *Mazer*, we reasoned that, although the plaintiff recognized the need for jurisdictional discovery, the plaintiff never formally moved for such discovery and failed to take reasonable steps in seeking discovery during the more than four months that the defendant's dismissal motion was pending.  *Id.*

Here, the district court did not abuse its discretion in dismissing Airborne for lack of personal jurisdiction before allowing jurisdictional discovery.  As in *Mazer*, "[Aviation One] clearly recognized the potential utility of jurisdictional discovery, at least by the time it filed its response to [Airborne's] motion to dismiss" on October 14, 2014.  *See id.* at 1280.  In fact, nearly three months earlier, Aviation One had filed a motion seeking jurisdictional discovery as to Clyde in conjunction with its response to Clyde's motion to dismiss.  But Aviation One never sought jurisdictional discovery as to Airborne in the five-and-a-half-month period that Airborne's motion to dismiss was pending.  Nor did Aviation One otherwise indicate in its response to Airborne's motion to dismiss that discovery was needed to decide the issues of personal jurisdiction.[4]  Because Aviation One failed to take reasonable steps to seek discovery from Airborne, "[w]e cannot say that the district

---

[4] Aviation One suggests that the jurisdictional discovery it requested from Clyde was relevant to its claims against Airborne, but it fails to explain how the requested discovery would have supported its allegations of jurisdiction as to Airborne.  Although Aviation One now appears to contend that Clyde and Airborne conspired to deprive Aviation One of its claims against Airborne, no such conspiracy was alleged in the amended complaint.

court erred, much less abused its discretion." *See id.* at 1281 (citation and internal quotation marks omitted).

Moreover, we agree with the district court's alternative determination that Aviation One "also failed to articulate what jurisdictional information it would seek or that it believes would be discovered as to Airborne." Aviation One has not clearly briefed this issue to this Court, so it has abandoned any challenge to the district court's ruling. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (issues not clearly raised in the briefs are considered abandoned). That ruling provides an independent and alternative basis for affirming the district court's denial of jurisdictional discovery. *See id.* ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

B.    *Dismissal for Lack of Personal Jurisdiction*

Ordinarily, we consider two questions in resolving personal jurisdiction over a non-resident defendant: (1) whether personal jurisdiction exists under the forum state's long-arm statute; and (2) whether exercising jurisdiction over the non-resident defendant would violate the Due Process Clause of the Fourteenth Amendment. *Louis Vuitton*, 736 F.3d at 1350. The district court reached the second of these requirements only, so we limit our discussion to that requirement.

14

1.     Relevant Legal Principles

The Due Process Clause "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend traditional notions of fair play and substantial justice." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (internal quotation marks omitted); *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993). These requirements ensure that the defendant has "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Personal jurisdiction can be "general" or "specific." *See generally Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017). Here, Aviation One relies solely on specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted). The exercise of personal jurisdiction requires that "the defendant's suit-related conduct . . . create a substantial connection with the forum State." *Id.* The focus is on "contacts that the 'defendant himself' creates with the forum state." *Id.* (emphasis omitted).

In a case involving specific jurisdiction, the minimum-contacts test encompasses two distinct requirements: (1) "relatedness"—that "the plaintiff's

claims 'arise out of or relate to' at least one of the defendant's contacts with the forum"; and (2) "purposeful availment"—that "the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's law." *Louis Vuitton*, 736 F.3d at 1355. The defendant's purposeful contacts with the forum must be such that he should reasonably anticipate being haled into court there. *Id.* at 1357.

We may apply a different test for evaluating purposeful availment in intentional tort cases. *Id.* at 1356 ("In *intentional* tort cases, there are two applicable tests for determining whether purposeful availment occurred.") (emphasis in original); *see Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009). Specifically, we may apply the "effects" test articulated by the Supreme Court in *Calder v. Jones*. *Louis Vuitton*, 736 F.3d at 1356. Generally, the *Calder* effects test "requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield*, 736 F.3d at 1220 n.8.

A few other general points warrant mention. The Supreme Court has made clear that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. As a result, "the plaintiff cannot be the only link

between the defendant and the forum." *Id.* Of course, "the defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." *Id.* at 1123. But the defendant's relationship to the plaintiff, standing alone, "is an insufficient basis for jurisdiction." *Id.* Thus, the fact of a contract between a resident plaintiff and non-resident defendant does not automatically establish sufficient minimum contacts. *Burger King*, 471 U.S. at 478. Nor is "mere injury to a forum resident" a sufficient connection to the forum. *Walden*, 134 S. Ct. at 1125. "Due process requires that a defendant be haled into court in a forum State based on his own affiliations with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123.

2.   Discussion

To recap, the relevant facts are as follows. Airborne, a South African insurance broker, was contacted by S.A. Guinee, a Georgia LLC, to procure insurance coverage for an aircraft that would be operating in West Africa. Airborne knew that the aircraft's owner, Aviation One, was located in Florida, and Airborne agreed to procure insurance that named Aviation One as an insured and that included breach-of-warranty coverage that would have protected Aviation One's interest in the aircraft. Airborne procured insurance from a South African

insurer.  The renewal policy, which was in effect at the time of the accident, was geographically limited to the continent of Africa.[5]

After the aircraft crashed on September 1, 2009, Aviation One was unable to recover from the South African insurer, allegedly due to Airborne's failure to procure the requested breach-of-warranty endorsement.  Over the next several months, Airborne communicated directly with Aviation One in Florida by phone and email in an unsuccessful attempt to challenge the insurer's denial of the claim. Aviation One alleged that Airborne's failure to advise it of material information during this time further harmed Aviation One.

We hold that Airborne does not have sufficient minimum contacts with the state of Florida for the exercise of personal jurisdiction over Airborne to comport with due process.   Although Airborne agreed to procure insurance to cover Aviation One's interest in the aircraft while it was being flown in West Africa by a non-resident third party, it did not "'purposefully avail[]' [itself] of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's law." *Louis Vuitton*, 736 F.3d at 1355.  Airborne did not solicit business in Florida, did not insure property or a risk in Florida, and had no direct contact with

---

[5] Although the initial policy covered the aircraft's ferry flight from Florida, the district court found that this fact was not relevant to the minimum-contacts analysis because none of the allegations of tortious conduct arose from that provision of the policy or any damage that occurred during the transport.  *See Oldfield*, 558 F.3d at 1222–23 (stating that "the contact must be a 'but-for' cause of the tort.").  Aviation One does not clearly challenge that determination on appeal, so we deem any argument on this issue abandoned.  *See Sapuppo*, 739 F.3d at 680 (issues not plainly raised on appeal are deemed abandoned).

Aviation One in Florida before the crash.  After the crash, its contacts with Florida were limited to representing Aviation One's interests in a coverage dispute with an insurer based in South Africa.  Overall, Airborne's contacts with the forum state itself were not such that it should have reasonably anticipated being haled into court there.  *See id.* at 1357.

This case is similar to, but distinguishable from, two cases in which we have held that an out-of-state insurance broker who agreed to provide insurance coverage for a forum-state resident was subject to personal jurisdiction in the forum.  In *Ruiz de Molina*, the defendants were out-of-state insurance brokers who agree to procure marine insurance for the plaintiff's boat anchored in Alabama, the forum state.  207 F.3d at 1356–57.  Although the defendants had no direct contact with Alabama, we held that they reasonably could have anticipated being haled into court there because the insurance policy "was to be purchased by and delivered to an Alabama resident *for a boat anchored in Alabama which would, of necessity, move in Alabama waters*."  *Id.* at 1357–58 (emphasis added); *see id.* 1357 (noting that the defendants "knew that the insurance they were procuring was for a boat owned by an Alabama resident which was located in Alabama and which would necessarily traverse Alabama waters").

Similarly, in *Cronin v. Washington National Insurance Co.*, we held that an out-of-state insurance broker purposely availed itself of the benefits of Florida law

by agreeing to procure health insurance for a Florida resident "who was hospitalized in Florida." 980 F.2d at 670. Both *Ruiz de Molina* and *Cronin*, therefore, involved an agreement to procure insurance to cover a person, property, or risk in the forum state.

Here, however, the focus of the agreement was the procurement of insurance for an aircraft while it was being flown in West Africa. In contrast to *Ruiz de Molina* and *Cronin*, both the property and risk covered by the insurance policy were outside of the forum state. While the agreement may have contemplated continuing contacts with Aviation One specifically, in that Airborne represented Aviation One's interests after the crash in the ensuing coverage dispute against the South African insurer, the agreement did not contemplate any "continuing and wide-reaching contacts" in Florida. *See Walden*, 134 S. Ct. at 1122; *Burger King*, 471 U.S. at 480. Airborne's relationship with a forum resident is alone insufficient to establish minimum contacts with the forum.

We also note that both the initial and renewal insurance policies had forum-selection and choice-of-law clauses providing that the policies were governed by the law of the Republic of South Africa, which had jurisdiction in any dispute under the policy. Those clauses are an indication that Airborne did deliberately affiliate with the forum state and did not reasonably anticipate being haled into court in the United States based on a dispute arising from the policies. *See Burger*

20

*King*, 471 U.S. at 481–82 (holding that a choice-of-law clause providing that all disputes would be governed by the law of the forum state "reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there").

Aviation One stresses that payment by the insurer would have been required in Florida if Airborne had obtained the breach-of-warranty coverage. But the fact that Airborne's alleged actions caused economic harm in the forum state is not alone sufficient. *See Walden*, 134 S. Ct. at 1125 ("[M]ere injury to a forum resident is not a sufficient connection to the forum."). Nor did that harm arise from intentional conduct, such that the *Calder* effects test would apply. The *Calder* effects test is satisfied when the defendant commits an intentional tort expressly aimed at the forum that causes a reasonably foreseeable injury in the forum. *Louis Vuitton*, 736 F.3d at 1356. Aviation One asserts that it stated a claim for intentional breach of fiduciary duty, but we agree with the district court that Aviation One's claims were brought in negligence. As the court explained, "Plaintiff's Amended Complaint makes no mention of intentional or fraudulent behavior. To the contrary, Plaintiff alleges that it has been damaged '[a]s a result of Airborne's negligence' and 'as a direct consequence of Airborne's negligence.'" Moreover, the allegedly tortious acts or omissions were taken in South Africa, not

Florida.  Accordingly, we find the effects test inapplicable in these circumstances. *See id.* at 1357 n.11 ("[T]he 'effects test' applies only in intentional tort cases.").

Finally, we agree with the district court that Airborne's contacts with Aviation One in Florida after the crash are insufficient to establish minimum contacts with respect to Airborne's post-crash representation of Aviation One. While Airborne had some direct contacts with Aviation One in Florida after the crash, they were limited to email and telephone calls and related solely to events occurring outside of the United States.  Specifically, they concerned procedures and operations taking place in Africa regarding an insurance dispute with a South African insurer over an aircraft that crashed in West Africa.  The fact that Airborne communicated with and represented a Florida-based entity in that foreign dispute does not establish that Airborne had "fair warning" that its activities related to this matter would subject it to the jurisdiction of Florida.

Having carefully reviewed Airborne's contacts with Florida, the forum state, we cannot conclude that Airborne purposefully directed activities inside Florida such that it could be considered to have availed itself of the benefits and protections of the forum state.  *See Louis Vuitton*, 736 F.3d at 1355.  Airborne contacts with Aviation One, which related to an agreement to procure coverage for an aircraft located in Africa for its operations in Africa by a non-forum-resident

third party, were too attenuated to establish "a substantial connection with the forum State." *See Walden*, 134 S. Ct. at 1121.

Because Aviation One has not shown that Airborne had sufficient minimum contacts with the forum, we also conclude that exercising jurisdiction over Airborne would "offend traditional notions of fair play and substantial justice." *Sloss Indus.*, 488 F.3d at 925; *see Oldfield*, 558 F.3d at 1221 (stating that where, as here, the case involves an international defendant, "courts should consider '[t]he unique burdens placed upon one who must defend oneself in a foreign legal system'") (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct.*, 480 U.S. 102, 114 (1987)).

In sum, the district court properly dismissed Airborne for lack of personal jurisdiction.

## IV.  Forum-Selection Clause

We now turn to the district court's dismissal of Aviation One's claims against Clyde under the doctrine of *forum non conveniens* based on the forum-election clause in the retainer agreement.   We also consider Aviation One's subsidiary arguments that the court procedurally erred by granting Clyde's motion to dismiss on a ground not raised and before allowing jurisdictional discovery.

We review *de novo* the district court's construction of a contractual forum-selection clause.  *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1235 (11th

Cir. 2011); *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004). We review for an abuse of discretion the decision to enforce a valid forum-selection clause through the doctrine of *forum non conveniens*. *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014).

A.     Forum Non Conveniens *Dismissal*

Forum-selection clauses are enforceable through the doctrine of *forum non conveniens*. *Atl. Marine*, 134 S. Ct. at 580 ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."). Ordinarily, to obtain dismissal for *forum non conveniens*, the moving party must demonstrate three things: (1) an adequate alternative forum; (2) public and private factors weigh in favor of dismissal; and (3) the plaintiff can reinstate her lawsuit in the alternative forum without undue inconvenience or prejudice. *GDG Acquisitions*, 749 F.3d at 1028. In *Atlantic Marine*, the Supreme Court explained that "an enforceable forum-selection clause carries near-determinative weight in this analysis[.]" *Id*.

By agreeing to a forum-selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 134 S. Ct. at 582. Thus, "[a] binding forum-selection clause requires the court to find that the

*forum non conveniens* private factors entirely favor the selected forum." *GDG Acquisitions*, 749 F.3d at 1028–29.  Because public-interest factors will "rarely defeat a transfer motion, . . . forum-selection clauses should control except in unusual cases." *Atl. Marine*, 134 S. Ct. at 582.

"Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009); *see M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972) ("[A] freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect.").  The party seeking to avoid the forum-selection clause bears the burden of showing exceptional circumstances, predicated on public-interest considerations, to justify disturbing the clause. *Atl. Marine*, 134 S. Ct. at 580–81. Forum-selection clauses may be held invalid or unenforceable in four circumstances:

> (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy.

*Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998).

With respect to the first circumstance, the plaintiff must specifically "allege that the choice clause itself was included in the contract due to fraud in order to succeed in a claim that the choice clause is unenforceable." *Id.* In cases involving "non-negotiated" forum-selection clauses, we also "look to whether the clause was reasonably communicated to the consumer." *Krenkel*, 579 F.3d at 1281. In evaluating "reasonable communicativeness," we apply a two-part test that "takes into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms." *Id.*

Here, Aviation One's general assertions of fraud are insufficient to invalidate the forum-selection clause since Aviation One does not allege that the clause itself was included in the agreement because of fraud. And even assuming that the clause was "non-negotiated" and the "reasonable communicativeness" test applies, the district court properly found that test met. Clyde's email and engagement letter to Aviation One's President, William Udey, directed him to carefully read the attached Terms of Business, which included the forum-selection clause. By signing the engagement letter, Udey represented that he had received and agreed to Clyde's Terms of Business. The language of the clause was plain and gave Udey sufficient notice that he was agreeing to litigate in the English courts any disputes that might arise from the representation. *See Krenkel*, 579 F.3d at 1281–82.

26

Aviation One argues that it was unable to become meaningfully informed of the forum-selection clause because Clyde failed to disclose a conflict of interest and because Udey was more comfortable with email.  But Clyde's alleged lack of disclosure had no effect on Udey's ability to read, understand, and reject the forum-selection clause.  And the record shows that Udey was familiar with email, even if he was uncomfortable using it, that he could read and write English, and that he signed the agreement stating that he agreed to the Terms of Business, including the forum-selection clause.  Accordingly, Aviation One has not shown that the forum-selection clause was signed as a result of fraud or overreaching.

Nor has Aviation One shown that enforcing the forum-selection clause will deprive it of its day in court.  Aviation One's arguments focus on the inconvenience and unfairness of requiring its claims against Clyde to be brought in English courts.  However, to the extent that we may consider these factors after *Atlantic Marine*, "[t]he financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause."  *Rucker*, 632 F.3d at 1237.  That difficulty and expense "was foreseeable at the time of contracting."  *Id.*  For these reasons, Aviation One has not shown "that litigating in the contractual forum will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court."  *Id.* (emphasis omitted) (internal quotation marks omitted).

Because Aviation One did not establish that the forum-selection clause was invalid or unenforceable,[6] the district court properly gave the clause near-determinative weight in conducting the *forum non conveniens* analysis.  And the district court did not otherwise abuse its discretion in concluding that dismissal was appropriate based on the doctrine of *forum non conveniens.*

Aviation One argues that Airborne failed to meet its burden of showing the existence of an adequate and available alternative forum.  But *Atlantic Marine* makes clear that, because of the valid forum-selection clause, Aviation One had the burden of showing that dismissal of the complaint for refiling in England—"the forum for which the parties bargained"—was unwarranted.  134 S. Ct. at 581.  Aviation One presented no evidence that England was not an adequate or available alternative forum.

Aviation One's agreement to the forum-selection clause means that we must presume that "the private-interest factors . . . weigh[ed] entirely in favor of the preselected forum"—England.[7]  *Id.*  Therefore, the only factors relevant to whether

---

[6] Aviation One makes a few stray assertions that its remedies in English courts are inadequate, but it has made no showing in this regard either below or on appeal.  *See Lipcon*, 148 F.3d at 1297 ("[W]e will declare unenforceable choice clauses only when the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair.").  Nor does Aviation One argue that enforcement of the clause would contravene a strong public policy.

[7] Private-interest factors relevant in considering a *forum non conveniens motion* when there is no forum-selection clause include the following: (1) "relative ease of access to sources of proof"; (2) "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses"; (3) "possibility of view of premises, if view would

Aviation One met this burden of showing the existence of an adequate and available alternative forum were public-interest factors, such as "the administrative difficulties flowing from court congestion[,] the local interest in having localized controversies decided at home[,] and the interest in having the trial of a diversity case in a forum that is at home with the law."  *Id.* at 581 n. 6, 582 (alteration omitted).

Here, the district court correctly identified these principles and the relevant public-interest factors.  The court concluded that the public-interest factors were either neutral or counseled in favor of England as the forum.  The court's assessment was not unreasonable.

Specifically, the district court explained that it had no knowledge of the congestion of the courts of England but that the Middle District of Florida was one of the busiest districts in the United States, so it was unlikely that Aviation One would face more congestion in England than in Florida.  As for the second factor, the court found that the subject-matter of the dispute was not a localized controversy but instead was an "international business transaction with minimal ties to Florida."  Finally, the court determined that the last factor favored litigation in England because the retainer agreement included a choice-of-law provision

---

be appropriate to the action"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Atl. Marine*, 134 S. Ct. at 581 n. 6.

designating English law, with which English courts would obviously be more familiar. Based on this analysis, the court concluded that the public-interest factors failed to overcome the weight of the forum-selection clause, making dismissal appropriate.

Under these circumstances, the district court did not abuse its discretion in dismissing the case against Clyde. Aviation One argues that the dispute would be more easily litigated in Florida, but at least some of the witnesses were located in England or South Africa. And given the other factors mentioned by the district court and the significance of the forum-selection clause, it was not unreasonable for the court to conclude that dismissal pursuant to the doctrine of *forum non conveniens* was appropriate.

On a final note, we conclude that Aviation One could reinstate its lawsuit against Clyde without undue inconvenience or prejudice. *See GDG Acquisitions*, 749 F.3d at 1028. Clyde represents it is amenable to service of process in England, and it "stipulates that it will consent to service of process in England and toll any applicable statute of limitation in England as a condition of the dismissal." Clyde Br. at 27. These conditions were not included in the district court's dismissal order, but we may modify the dismissal order to include the conditions to which Clyde agreed. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1315 (11th Cir. 2001) (modifying a dismissal order to include a defendant's stipulations that it will

submit to the jurisdiction of a foreign court); *see also Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430–31 (11th Cir. 1996) (noting that, "[i]n order to avoid unnecessary prejudice to [the plaintiff], the district court wisely attached to the dismissal conditions to which the defendants have agreed," which included an agreement "to submit to the jurisdiction of the French court, waive any statute of limitations or jurisdictional defenses, and satisfy any final judgment").

We therefore modify the district court's dismissal order in this case to include the conditions to which Clyde agreed. With those modifications, we affirm the *forum non conveniens* dismissal of the claims against Cyde.

B.    *Procedural Arguments*

Finally, Aviation One argues that the district court procedurally erred in two ways. Neither argument is persuasive.

First, Aviation One contends that the district court failed to afford it due process when it dismissed the complaint based on the doctrine of *forum non conveniens*, which was not addressed by Clyde. Due process generally requires district courts to "provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011) (quotation marks omitted). Thus, a district court abuses its discretion by *sua sponte* dismissing a lawsuit based on *forum non conveniens*. *Id.*

Here, the district court afforded Aviation One due process before dismissing the complaint against Clyde. Clyde moved to dismiss based on the forum-selection clause in the retainer agreement. While Clyde did not address the *forum non conveniens* analysis in its motion, it argued for dismissal based on a valid and enforceable forum-selection clause. Based on Clyde's arguments and the state of the law at the time, Aviation One had a full and fair opportunity to argue that despite the presence of the forum-selection clause, dismissal on *forum non conveniens* grounds was not appropriate. *See Atl. Marine*, 134 S. Ct. at 580–81. Indeed, Aviation One had the burden to establish that dismissal of the complaint for refiling in England—"the forum for which the parties bargained"—was unwarranted. *Id.* at 581. Because Aviation One had notice and an opportunity to respond to Clyde's motion to dismiss based on forum-selection clause, the district court did not violate due process by enforcing the forum-selection clause through the doctrine of *forum non conveniens*.

Second, Aviation One contends that the district court abused its discretion in denying jurisdictional discovery as to Clyde. But Aviation One does not explain how such discovery would have aided the court's analysis of the forum-selection clause. Nor is discovery generally necessary when addressing *forum non conveniens*, particularly when the case involves a forum-selection clause. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981) ("Requiring extensive

32

investigation would defeat the purpose of their [*forum non conveniens*] motion."). Here, we are convinced that the district court had sufficient information to make the *forum non conveniens* determination.

Finally, we note that the district court did not err by addressing the forum-selection clause before deciding the issue of personal jurisdiction.[8] *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007). And because dismissal was appropriate on *forum non conveniens* grounds, the court properly denied Aviation One's request for jurisdictional discovery on the issue of personal jurisdiction over Clyde. *See id.* For that reason, it also did not err in not permitting Aviation One to file a reply addressing that issue.

## V. Conclusion

For the reasons stated, the district court properly dismissed Airborne for lack of personal jurisdiction, and it did not abuse its discretion in dismissing the claims against Clyde under the doctrine of *forum non conveniens*. We modify the dismissal order to include Clyde's stipulation "that it will consent to service of process in England and toll any applicable statute of limitation in England as a condition of the dismissal."

**AFFIRMED as modified**.

---

[8] Likewise, although we questioned the parties about whether the district court's diversity jurisdiction was adequately established, the court did not need to have subject-matter jurisdiction in order to dismiss the case for lack of personal jurisdiction and on *forum non conveniens* grounds. *See Sinochem*, 549 U.S. at 435–36.

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 11, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  16-16187-FF
Case Style:  Aviation One Of Florida, Inc. v. Airborne Insurance Consultants, et al
District Court Docket No:  6:13-cv-01243-CEM-DAB

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF")**
**system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal.
Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in
accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for
rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings,
a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time
specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a
motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list
of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-
1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition
for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time
spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a
petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404)
335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, coss taxed against the appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature
block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs